**DORSETT BROTHERS CONCRETE SUPPLY, INC.; Cox Glass, Inc. d/b/a Able Glass Co.; South Houston Lumber Company; Estrada Drywall; and Floor Crete Systems, Inc.; Appellants,**

v.

**SAFECO TITLE INSURANCE COMPANY and Westinghouse Credit Corporation, Appellees.**

No. C14–92–00165–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 29, 1993.

Rehearing Denied Sept. 2, 1993.

---

James Gumbert, Sullins, Johnston, Rohrbach & Magers, Houston, for appellants.

William D. Wood, Paul Fogarty, Fulbright & Jaworski, L.L.P., Houston, for appellee Safeco Title Ins. Co.

Lawrence Jay Needle, Butler & Binion, Houston, for appellee Westinghouse Credit Corp.

Before ROBERTSON, CANNON and BOWERS, JJ.

## OPINION

CANNON, Justice.

This is an appeal of two summary judgments in a lawsuit about a failed condominium construction project. Appellant Dorsett Brothers Concrete Supply, Inc. ("Dorsett Concrete") sued Safeco Title Insurance, Co.

("Safeco Title") for misrepresentation, breach of third-party-beneficiary contract, negligence, negligence *per se,* and breach of the duty of good faith and fair dealing. Dorsett Concrete also sued Westinghouse Credit Corp. ("Westinghouse Credit") to enforce mechanic's and materialman's liens. Other building materials suppliers, Cox Glass, Inc. d/b/a Able Glass, Co.; South Houston Lumber Co.; Estrada Drywall; and Floor Crete Systems, Inc. (collectively the "Intervenors"), intervened against Westinghouse Credit. The trial court granted Safeco Title's and Westinghouse Credit's motions for summary judgment. Dorsett Concrete appeals the Safeco Title judgment; Dorsett Concrete and the Intervenors appeal the Westinghouse Credit judgment. We affirm in part, reverse and remand in part.

## SAFECO TITLE'S SUMMARY JUDGMENT

Dorsett Concrete was a concrete materials supplier. The materials provided by Dorsett Concrete were used in the construction of the Egret Bay Apartments in Webster, Texas (the "Project"). Dorsett Concrete brought this action against ten defendants to collect monies due for materials delivered to one or more of Safeco Title's co-defendants. The defendants included the title insurer (Safeco Title), the Project's lender (Westinghouse Credit), plus various subcontractors, general contractors, owners, and individuals connected with the Project.

Dorsett Concrete sought payment on deliveries made between August and December, 1985. It had unpaid invoices amounting to $42,598.94. Dorsett Concrete filed mechanic's and materialman's liens on December 23, 1985; February 16, 1986; and April 8, 1986. On February 17, 1986, Dorsett Concrete initiated the present suit.

Safeco Title's involvement with the Project consisted of providing (1) a mortgagee's title insurance policy and related services to co-defendant Westinghouse Credit, the construction lender, and (2) an owner's title insurance policy to the owner of the Project.

Dorsett Concrete's basic complaint against Safeco Title revolves around an allegedly mishandled check. On or about January 15, 1986, the owner/general contractor of the Project gave Safeco Title a check for $77,473.78 payable to Safeco Title. A notation on the check stated, "Double amount for Dorsett [Concrete]." Safeco Title's Olwen Sandell held the check in her file without endorsing it or attempting to negotiate it until May 22, 1986, when it was dishonored. Dorsett Concrete alleges that Sandell led it to believe that Safeco Title was holding good funds for the benefit of Dorsett Concrete. Dorsett Concrete complains that Safeco Title failed to follow standard business practices to promptly cash the check. As a result, Safeco Title does not now have a fund upon which Dorsett Concrete can draw to satisfy its liens.

Safeco Title has the burden to show that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Property Management, Co.,* 690 S.W.2d 546, 548–59 (Tex. 1985). In deciding whether there is a disputed material fact issue precluding summary judgment, we take evidence favorable to Dorsett Concrete as true. *Id.* We indulge every reasonable inference in favor of Dorsett Concrete and resolve any doubts in its favor. *Id.* If Safeco Title's motion and summary judgment proof establishes its right to judgment as a matter of law, then the burden shifts to Dorsett Concrete to present any unresolved fact issues precluding summary judgment. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979).

In point of error one, Dorsett Concrete complains that the trial court erred in granting Safeco Title's motion for summary judgment.

On appeal, Dorsett Concrete provides no argument or authority supporting its claims of negligence *per se* or breach of the duty of good faith. Therefore, those claims are not presented for review. *See San Jacinto River Auth. v. Duke,* 783 S.W.2d 209, 209–10 (Tex. 1990). However, Dorsett Concrete does contest on appeal the dismissal of its misrepresentation, breach of third-party-beneficiary contract, and negligence claims.

### Misrepresentation

Dorsett Concrete claims that Safeco Title represented to it that an escrow account of $77,473.78 existed for Dorsett Concrete's benefit. Dorsett Concrete maintains that it relied on that representation when it did not seek available judicial relief or take other action to ensure payment on its liens.

■ Justifiable reliance is a necessary element of both negligent and intentional misrepresentation. *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex.1983). In its motion for summary judgment, Safeco Title contended that, as a matter of law, Dorsett Concrete could not prove this reliance element.

■ Dorsett Concrete maintains that Safeco Title's own summary judgment proof establishes that Dorsett Concrete relied on Safeco Title's representation by not taking judicial action or seeking other relief. We assume Dorsett Concrete refers to its answers to Safeco Title's interrogatories. But one's own answers to interrogatories cannot be used by a party opposing a motion for summary judgment to raise a fact issue. *Keever v. Hall & Northway Advertising*, 727 S.W.2d 704, 705 (Tex.App.—Dallas 1987, no writ). Answers to interrogatories can be used only against the answering party, not as self-serving statements for the party making them. *Id.* Dorsett Concrete calls our attention to no affidavit, deposition testimony, or other evidence raising a fact issue on reliance.

■ Moreover, Safeco Title points out that the timing of the alleged misrepresentation rendered detrimental reliance by Dorsett Concrete impossible. Safeco Title's summary judgment proof shows that Dorsett Concrete supplied the materials at issue from August to October 1985, filed liens between December 1985 and April 1986, and initiated this lawsuit in February 1986. According to the deposition of Randall Dorsett, the alleged misrepresentation occurred in May 1986. Safeco Title argues that Dorsett Concrete could not have detrimentally relied on the alleged misrepresentation since the materials were supplied and corrective judicial action taken *before* the alleged misrepresentation was made. *See, e.g., Morgan v. Amarillo Nat'l Bank*, 699 S.W.2d 930, 937 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.) (1982 reliance impossible on 1983 misrepresentations).

Dorsett Concrete directs us to no summary judgment proof to refute Safeco Title's timing argument.

We find that Safeco Title has established that there are no genuine issues of material fact and that the reliance element of Dorsett Concrete's misrepresentation claim fails as a matter of law. The summary judgment dismissing Dorsett Concrete's misrepresentation claim was proper.

### Third–Party–Beneficiary Contract

■ Next, Dorsett Concrete claims that there was an escrow account agreement between Safeco Title and the owner and that Dorsett Concrete was a third-party beneficiary. Dorsett Concrete alleges that Safeco Title breached that contract by not obtaining a written agreement with the owner or lender, by not requiring the owner or lender to fund the account, and by not timely cashing a $77,473.78 check from the owner to Safeco Title that was earmarked for Dorsett Concrete.

Dorsett Concrete argues that Safeco Title did not negate as a matter of law Dorsett Concrete's contention that it was an intended beneficiary of a contract involving Safeco Title. We disagree.

Safeco Title directs us to the deposition testimony of Olwen Sandel, former Safeco Title representative, who stated that the $77,473.78 check given to Safeco Title from the owner was for the benefit of the owner and Safeco Title. Dorsett Concrete points us to one of its answers to a Safeco Title interrogatory, "Safeco [Title] represented that Dorsett [Concrete] would be paid and the escrow account was set up for their benefit." Once again, we observe that one's own answers to interrogatories cannot be used by a party opposing a motion for summary judgment to raise a fact issue. *Keever, supra.*

Dorsett Concrete next directs us to the check signed by the owner, made out to Safeco Title, and containing the notation,

"Double amount for Dorsett [Concrete]." The amount of the check was exactly twice the amount of Dorsett Concrete's lien at the time ($38,736.89). Indulging all inferences in favor of Dorsett Concrete, we agree that the check and notation raise a fact issue regarding the existence of some type of escrow contract between the owner and Safeco Title.

We now ask whether Safeco Title has proven as a matter of law that, even if a contract did exist, Dorsett Concrete was not an intended beneficiary.

■ A third party may recover upon a contract made between other parties only if the parties intended to secure some benefit to that third party, *and* only if the contracting parties entered into the contract directly and *primarily* for the third party's benefit. *Economy Forms Corp. v. Williams Bros. Constr. Co.*, 754 S.W.2d 451, 456 (Tex.App.—Houston [14th Dist.] 1988, no writ). In deriving intent from a contract, a court presumes that the parties contract for themselves, and a contract will not be construed as having been made for the benefit of the third party unless it clearly appears that the contracting parties intended it. *Id.* at 455. "The right of [a third party] to enforce the contract . . . 'should not rest on implication,' but should be clearly apparent, and any doubt should be resolved against such intent." *Knight Constr. Co. v. Barnett Mortgage Trust*, 572 S.W.2d 381, 382–83 (Tex.Civ. App.—Houston [14th Dist.] 1978, writ ref'd n.r.e.) (citation omitted).

■ Safeco Title argues that the notation on the check stating, "Double amount for Dorsett [Concrete]," is not specifically referable to any contract. It contends that the notation does not demonstrate the necessary clear intent to directly contract for the primary benefit of Dorsett Concrete with respect to the funds represented by the check. We agree.

Dorsett Concrete has directed us to no summary judgment proof that raises fact questions that if resolved favorably to Dorsett Concrete would establish the clear intent by Safeco Title and the Project's owner to primarily benefit Dorsett Concrete.

At best, the check and notation establish that Dorsett Concrete was an incidental beneficiary of the contract. But a mere incidental beneficiary may not enforce a provision of a contract. *Id.* at 383; *see, e.g., Citizen's Nat'l Bank v. Texas & Pac. Ry.*, 136 Tex. 333, 150 S.W.2d 1003, 1006–1007 (1941), *cert. denied*, 314 U.S. 656, 62 S.Ct. 109, 86 L.Ed. 526 (1941) (holding that materialmen and laborers are not third-party beneficiaries of funds retained under construction contracts, even if a contracting party holds the retained funds for the purpose of satisfying claims and liens).

We find that the summary judgment dismissing Dorsett Concrete's third-party-beneficiary claim was proper.

### Negligence

Dorsett Concrete claims that Safeco Title was negligent in not obtaining a written escrow agreement, in not requiring the owner or lender to fund the account, and in not timely cashing the $77,473.78 check earmarked for Dorsett Concrete.

■ "Duty" is a threshold inquiry in a negligence case and its existence is a matter of law for the court. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). In its motion for summary judgment, Safeco Title argued that it had no common law, contractual, or statutory duty to Dorsett Concrete.

■ First, Safeco Title asserts that there is no case law establishing a common law duty owed by a title insurer to mechanic's and materialman's lien claimants. In reply, Dorsett Concrete cites us to *Hideca Petroleum Corp. v. Tampimex Oil Int'l, Ltd.*, 740 S.W.2d 838, 847 (Tex.App.—Houston [1st Dist.] 1987, no writ) and *Susser Petroleum Co. v. Latina Oil Corp.*, 574 S.W.2d 830, 832 (Tex.Civ.App.—Texarkana 1978, no writ). Those cases establish that one who supplies information to another in a business transaction owes that party a duty of reasonable care and competence in communicating that information. But these cases involve negligent misrepresentation, and we have already found that Dorsett Concrete's detrimental reliance element is negated. Dorsett Con-

crete points us to no other case law establishing a common law duty between a title insurer and a lien claimant.

Next, Safeco Title presented deposition testimony by Dorsett Concrete's Randall Dorsett where he admitted that there was no contract or agreement between Dorsett Concrete and Safeco Title. Safeco Title argues, therefore, that there was no contractual duty owed to Dorsett Concrete by Safeco Title. Dorsett Concrete points us to no summary judgment proof raising a fact issue regarding any contract between Dorsett Concrete and Safeco.

Finally, Dorsett Concrete brings no argument on appeal regarding any statutory duty imposed on a title insurer on behalf of a lien claimant.

There are no fact issues bearing on a Safeco Title legal duty to Dorsett Concrete. We find that Safeco Title has negated the duty element of Dorsett Concrete's negligence claim.

We overrule point of error one.

## WESTINGHOUSE CREDIT'S SUMMARY JUDGMENT

In point two, Dorsett Concrete and the Intervenors (collectively the "Materialmen") complain that the trial court erred in granting Westinghouse Credit's motion for summary judgment. The standards of summary judgment review are stated under point one. *See Nixon,* 690 S.W.2d at 548–59.

Westinghouse Credit was the construction lender for the Project and foreclosed on the Project in July 1986. The Materialmen sought to enforce their liens amounting to over $200,000 (1) against the statutory retainage allegedly held by Westinghouse Credit as agent of the owner, and/or (2) against improvements which could be removed without material damage to the realty. These are the only aspects of the summary judgment that the Materialmen bring forward on appeal. They contend that fact issues exist precluding summary judgment. We agree.

### Statutory Retainage

The Texas Property Code requires an owner of a construction project to retain 10% of contract sums for the benefit of third-party mechanic's and materialman's lien holders, i.e., lien holders that were not under direct contract with the owner. *See* TEX. PROP.CODE ANN. § 53.101 (Vernon Supp. 1993). The Materialmen contend that a fact issue exists whether Westinghouse Credit acted as agent of the owner to hold this statutory retainage. The Materialmen point to the deposition of Justin Dzon, a Westinghouse Credit corporate representative, wherein Dzon admitted that Westinghouse Credit was withholding 10% of the contract sums paid to the owner/general contractor as "retainage."

Westinghouse Credit disavows that the 10% it withheld from the owner had any connection to the 10% that the owner was required to retain for the lienholders. Westinghouse Credit argues that its responsibilities were solely governed by an express construction loan contract with the owner. That agreement expressly denies any third-party liability. No mention is made of Westinghouse Credit acting as agent for the owner or of Westinghouse Credit retaining any sums for the benefit of the Materialmen. The contract language is clear and unequivocal:

> It is distinctly understood and agreed that there are no contractual relationships, either expressed or implied, between the lender and any materialman, subcontractor, craftsman, laborer, or any person supplying work, labor or materials on the job, nor shall any third person or persons, individuals, or corporate, be deemed to be beneficiaries of this agreement, or of any term, condition, or provision hereof, or on account of any action taken by lender pursuant hereto or any assignment by borrower contained herein.

Materialmen depositions and answers to interrogatories confirm that Westinghouse Credit undertook no contractual obligations toward them.

Westinghouse Credit argues that Art 5 of the Standard Form Agreement between the owner and the owner's contractors specified that *the owner* would retain 10% of contract

sums. *This* was the retainage required by the Property Code. In contrast, the 10% withheld by Westinghouse Credit from the owner was for the benefit of Westinghouse Credit to ensure performance by the owner. Dzon's deposition testimony, offered by the Materialmen, was consistent with this concept.

Despite the clear language of the construction loan agreement, we find that Westinghouse Credit's summary judgment proof does not establish as a matter of law that it was not acting as an agent of the owner. We agree that the contract was clear that the Materialmen could not sue as third-party beneficiaries under the contract. However, the Materialmen are not asserting a contractual claim against Westinghouse Credit. Rather, they complain that Westinghouse Credit was the agent of the owner and performed the owner's statutory duty of retainage.

We find that Westinghouse Credit's formal contract with the owner does not preclude the existence of an agency relationship to perform the statutory retainage function for the owner. A fact issue exists whether the "retainage" referred to in Dzon's testimony was § 53.101 statutory retainage or an unrelated contractual retainage. The question of agency relationship is a matter of law, but based on facts ascertained by the fact finder. *Moore v. El Paso Chamber of Commerce*, 220 S.W.2d 327, 331 (Tex.Civ.App.—El Paso 1949, writ ref'd n.r.e.).

We find that a fact issue remains relevant to whether an agency relationship existed.

### Removable Improvements

Westinghouse Credit foreclosed on the Project in July 1986. Its deed of trust lien pre-dated the Materialmen's liens. However, mechanic's and materialman's liens on removable improvements take priority over a deed of trust lien such as the one claimed by Westinghouse Credit even if the deed of trust was recorded before the inception of the mechanic's liens. *First Nat'l Bank v. Whirlpool Corp.*, 517 S.W.2d 262, 269 (Tex.1974); TEX.PROP.CODE ANN. § 53.-123 (Vernon 1984). Removable improvements are those that can be removed without causing material damage to the land, the pre-existing improvements, or the improvements themselves. *Exchange Sav. & Loan Ass'n v. Monocrete Property, Ltd.*, 629 S.W.2d 34, 36 (Tex.1982).

Westinghouse Credit offered summary judgment proof that the Materialmen failed to plead that their respective improvements were removable. In fact, in their answers to Westinghouse Credit's interrogatories the Materialmen averred that the materials they supplied were not removable.

The Materialmen reply that mechanic's liens actually attach to *all* improvements, including improvements furnished by others. *See* TEX.PROP.CODE ANN. § 53.022 (Vernon 1984). Therefore, even if their individually-supplied improvements might not be removable, their liens attach to removable improvements supplied by others. In support, they cite *Richard H. Sikes, Inc. v. L & N Consultants, Inc.*, 586 S.W.2d 950 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.) and *Wallace Gin Co. v. Burton–Lingo Co.*, 104 S.W.2d 891 (Tex.Civ.App.—Austin 1937, no writ).

We do not read these cases as broadly as do the Materialmen. We interpret *Sikes* to say that a mechanic's lien extends to all improvements *supplied by the lien holder* regardless of who actually placed the improvements on the property. *Sikes, supra* at 956. In *Sikes*, the fact that a contractor used subcontractors to supply labor and materials to improvements did not prevent its mechanic's lien from reaching those improvements. *Id.; see also Wilson v. Hinton*, 131 Tex. 593, 116 S.W.2d 365, 367 (1938) (mechanic's lien attaches to materials supplied by lien holder even if supplied through an agent of lien holder). These cases do not establish that a mechanic's lien extends to any and all improvements toward which the lien holders provided no labor or materials.

However, we read *Wallace Gin* to hold that a contractor need not supply all of the materials for an improvement to be able to execute a lien on that improvement. *Wallace Gin, supra* at 892. Therefore, we find that a fact issue remains regarding the existence of removable improvements toward which the

**424**

Materialmen supplied labor or materials in part.

We sustain point two.

## CONCLUSION

We affirm the summary judgment in favor of Safeco Title. We reverse the summary judgment as to Westinghouse Credit to resolve fact issues on statutory retainage and removable improvements.

Affirmed in part, reversed and remanded in part.

BOWERS, J., not participating.