Thomson v. Espey 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00040-CV







M. D. Thomson and Austin Banister Joint Venture, Appellants



v.



Espey Huston & Associates, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 452,069, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING







 Appellants M. D. Thomson and Austin Banister Joint Venture (collectively
"Thomson") sued appellee Espey Huston & Associates, Inc. ("Espey") for breach of contract and
negligence arising out of Espey's role in the construction of an apartment complex. The trial
court granted summary judgment in favor of Espey on all causes of action. We will affirm in part
and reverse in part.



FACTUAL AND PROCEDURAL BACKGROUND


 In June 1985, M. D. Thomson entered into a joint venture with Gary Woodard and
Morris Hamilton for the purpose of developing real estate. The resulting entity, Austin Banister
Joint Venture, contracted with the Hamilton-Woodard Company, a partnership between Woodard
and Hamilton, for the construction of an apartment complex on a tract of land owned by
Thomson. Hamilton-Woodard, in turn, entered into two contracts with Espey, an engineering
consulting firm.

 The first of these contracts, the "Scope of Services Contract," engaged Espey to
perform a variety of engineering and design services in connection with the construction. Among
other functions, Espey was responsible for designing drainage structures, facilities for controlling
storm water runoff, and "on site" water and wastewater distribution and collection systems. 
Espey was also responsible for testing soil quality and providing certain foundation and pavement
recommendations.

 The second contract, the "Draw Inspection Contract," was required by a loan
agreement between Austin Banister Joint Venture and one of its creditors. The agreement
required the joint venture to hire an independent contractor to periodically inspect the construction
site and report on whether the construction was proceeding according to plan. Satisfactory
inspection reports were a condition to continued financing. Under the Draw Inspection Contract,
Espey agreed to perform these inspections for approximately $120.00 to $150.00 per draw
application.

 By July 1986, Espey had performed all of its services, and the apartment complex
was substantially complete. Over the next two years, Thomson says, it became apparent that the
complex was riddled with design and construction defects. (1) These defects included problems
related to drainage and water runoff.

 On October 6, 1988, Thomson, on his own behalf and on behalf of the joint
venture, filed suit against Espey (2) alleging breach of both the Scope of Services Contract and the
Draw Inspection Contract, and also alleging that Espey was negligent in performing its duties
under those contracts. Espey moved for summary judgment, arguing that: (1) neither Thomson
nor the joint venture were in privity with Espey or were third-party beneficiaries, and therefore
neither could sue Espey for breach of contract; (2) Thomson's negligence claims were barred by
the economic loss rule; (3) Thomson's negligence claims were barred by the statute of limitations;
and (4) Thomson's claims based on faulty construction were barred by the doctrines of waiver and
estoppel. The trial court granted summary judgment in favor of Espey on all causes of action. 
Thomson challenges the summary judgment in six points of error.



DISCUSSION


 The standards for reviewing a summary judgment are well established: (1) The
movant for summary judgment has the burden of showing that there is no genuine issue of
material fact and that it is entitled to judgment as a matter of law; (2) In deciding whether there
is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; (3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). The purpose of summary judgment is to eliminate patently
unmeritorious claims or untenable defenses, not to deprive litigants of their right to a full hearing
on the merits of any real issue of fact. Gulbenkian v. Penn, 252 S.W.2d 929, 931 (Tex. 1952).



A.  Breach of Contract Claims

 Thomson alleges that Espey breached both contracts. However, Thomson is not
a party to either of them; both are between Espey and Hamilton-Woodard. Thomson seeks
recovery under his breach-of-contract theories solely as a third-party beneficiary. A third party
may recover on a contract made between other parties only if the parties intended to secure some
benefit to that third party, and only if the contracting parties entered into the contract directly and
primarily for the third party's benefit. Dorsett Bros. Concrete Supply, Inc. v. Safeco Title Ins.
Co., 880 S.W.2d 417, 421 (Tex. App.Houston [14th Dist.] 1993, writ denied). Moreover, there
is a presumption against third-party beneficiary agreements. Corpus Christi Bank & Trust v.
Smith, 525 S.W.2d 501, 503-04 (Tex. 1975) ("[W]e must begin with the presumption that parties
contract for themselves, and a contract will not be construed as having been made for the benefit
of third parties unless it clearly appears that such was the intention of the contracting parties."). 
For Thomson to prevail on his contract claims, the intent to benefit him must be clearly apparent;
any doubt must be resolved against finding that he is a third-party beneficiary. See Dorsett Bros.,
880 S.W.2d at 421.

 With respect to the Scope of Services Contract, Thomson relies on two provisions. 
First, the contract required the joint venture to provide Espey with certain information necessary
for its engineering services. Second, the contract's title indicates that the construction project in
question is located on property owned by Thomson. (3) These aspects of the contract, he argues,
designate him as a third-party beneficiary.

 In support of his position, Thomson relies on Rudolph v. ABC Pest Control, Inc.,
763 S.W.2d 930 (Tex. App.San Antonio 1989, writ denied). In Rudolph, a home-seller agreed
to provide the buyer with a written termite inspection report on the house. The seller hired ABC
Pest Control, which inspected the premises and reported that there were no active termite
infestations. Id. at 931. Later, the buyer discovered an infestation that had apparently been
present at the time of the inspection. Id. at 931-32. The court held that the buyer was a third-party beneficiary of the contract between the seller and the inspector, reasoning that: "[A]lthough
the contract did not specifically state that the plaintiffs were the intended beneficiaries of the
contract, it was sufficient that the contract was evidently made for the benefit of third persons." 
Id. at 934 (quoting Johnson v. Wall, 248 S.E.2d 571, 574 (N.C. Ct. App. 1978)).

 The standard used by the Rudolph court ("evidently made for the benefit of third
persons"), incorporated from a North Carolina intermediate appellate court opinion, is arguably
more liberal than other Texas case law, which stresses that the intent to benefit a third party must
be clearly apparent from the contract itself. See, e.g., Corpus Christi Bank & Trust, 525 S.W.2d
at 503-04; Tennessee Gas Pipeline Co. v. Lenape Resources Corp., 870 S.W.2d 286, 295 (Tex.
App.San Antonio 1993, writ granted); Brunswick Corp. v. Bush, 829 S.W.2d 352, 354 (Tex.
App.Fort Worth 1992, no writ); Bruner v. Exxon Co., U.S.A., 752 S.W.2d 679, 683 (Tex.
App.Dallas 1988, writ denied). Without deciding whether the standard applied by the Rudolph
court may be correct in other contexts, we conclude that the present case is governed by the
generally prevailing rule that, in the construction context, a property owner is ordinarily not a
third-party beneficiary of a contract between the general contractor and a subcontractor.

 The relationships between property owners, general contractors, and subcontractors
are well established under generally prevailing contract principles. A leading treatise on contract
law explains:



Such contracts [between a principal building contractor and subcontractors] are
made to enable the principal contractor to perform; and their performance by the
subcontractor does not in itself discharge the principal contractor's duty to the
owner with whom he has contracted. The installation of plumbing fixtures or the
construction of cement floors by a subcontractor is not a discharge of the principal
contractor's duty to the owner to deliver a finished building containing those items;
and if after their installation the undelivered building is destroyed by fire, the
principal contractor must replace them for the owner, even though he must pay the
subcontractor in full and has no right that the latter shall replace them. It seems,
therefore, that the owner has no right against the subcontractor, in the absence of
clear words to the contrary. The owner is neither a creditor beneficiary nor a
donee beneficiary; the benefit that he receives from performance must be regarded
as merely incidental.



4 Arthur L. Corbin, Corbin on Contracts § 779D, at 46-47 (1951). The Restatement (Second)
of Contracts endorses the same rule by way of an illustration: "A contracts to erect a building for
C. B then contracts with A to supply lumber needed for the building. C is an incidental
beneficiary of B's promise, and B is an incidental beneficiary of C's promise to pay A for the
building." Restatement (Second) of Contracts § 302, illus. 19 (1979).

 This general rule is grounded in the respective interests of the property owner,
general contractor, and subcontractors. The contract between the property owner and the general
contractor gives the property owner the right to a finished building. Subsequent contracts between
the general contractor and subcontractors add nothing to this entitlement; the owner is still entitled
to the same building, regardless of the means by which it is constructed. These same
subcontracts, however, are vital to the interests of the general contractor, who has assumed the
obligation to deliver a finished building. In most cases, subcontracts will be necessary to enable
the general contractor to deliver the building and avoid liability for breach of contract. This need,
rather than the interests of the property owner who is entitled to a finished building both before
and after the subcontract, is the primary motivation for subcontracting.

 For their part, subcontractors are selected by the general contractor. Usually, it
is the general contractor who assigns them tasks, negotiates and signs their contracts, monitors
their performance, and pays them on completion. If the subcontractors' performance falls short
of what the owner is entitled to, it is the general contractor who has to make up the difference. 
From the subcontractors' perspective, as well as the general contractor's, subcontracts are
intended primarily to benefit those parties rather than the property owner. We conclude that,
absent clear evidence to the contrary, a property owner is not a third-party beneficiary of a
contract between the general contractor and a subcontractor. See B & C Constr. Co. v. Grain
Handling Corp., 521 S.W.2d 98, 101 (Tex. Civ. App.Amarillo 1975, no writ). (4)

 In the present case, there is no such clear evidence. While Thomson benefited
indirectly from the Scope of Services Contract, real estate development almost always benefits the
property owner. However, this merely establishes that Thomson was an incidental beneficiary,
and incidental beneficiaries may not sue on a contract. Mandell v. Hamman Oil & Ref. Co., 822
S.W.2d 153, 161 (Tex. App.Houston [1st Dist.] 1991, writ denied). In order to be entitled to
sue on the contract, Thomson would have to establish not only that he benefited from the contract,
but also that Hamilton-Woodard and Espey contracted directly and primarily for his benefit. See
Dorsett Bros., 880 S.W.2d at 421. We presume that Hamilton-Woodard and Espey did not do
so, and the contractual provisions to which Thomson points are insufficient to overcome that
presumption.

 The Draw Inspection Contract provides even less support for Thomson's claim to
be a third-party beneficiary. That contract was entered into at the insistence of the bank,
ostensibly for its own benefit. In that respect it is clearly distinguishable from Rudolph, where
the contract in question was specifically demanded by the party claiming third-party beneficiary
status. See 763 S.W.2d at 931.

 Furthermore, the contract itself contains no mention of Thomson or his property. 
Thomson bases his argument on a single provision indicating that the draw inspections are being
performed "for compliance of the loan agreement for this project." By this reference, he
contends, the contract "incorporates the terms of and reflects [Espey's] knowledge of the
Construction Loan Agreement," and thereby designates Thomson as a third-party beneficiary. 
We are not persuaded. Thomson offers no compelling reason why a simple reference to the loan
agreement should be interpreted as an incorporation of all of its terms, or why such an
incorporation would necessarily designate him as a third-party beneficiary. Mere knowledge that
Thomson would benefit from the draw inspections is insufficient to support Thomson's claims to
be a third-party beneficiary. The critical inquiry is whether it is clearly apparent that Hamilton-Woodard and Espey contracted directly and primarily to benefit Thomson. With respect to both
the Scope of Services Contract and the Draw Inspection Contract, we conclude that such purpose
is not clearly apparent. Points of error two and three are overruled.





B.  Tort Claims and the Economic Loss Rule

 The distinction between contract and tort actions is not always entirely clear. See
generally William Powers, Jr. & Margaret Niver, Negligence, Breach of Contract, and the
"Economic Loss" Rule, 23 Tex. Tech. L. Rev. 477 (1992). Outside of certain special contexts,
such as insurance contracts, the mere breach of a contract is not a tort. See Crim Truck & Tractor
Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 594 (Tex. 1992); Adolph Coors Co. v.
Rodriguez, 780 S.W.2d 477, 481-82 (Tex. App.Corpus Christi 1989, writ denied). However,
the mere fact that an act is done pursuant to a contract does not shield it from the general rules
of tort liability. Depending on the circumstances, a party's acts may breach duties in tort or
contract alone or simultaneously in both. Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618
(Tex. 1986).

 The nature of the injury suffered generally determines the existence of a cause of
action in tort. Id. When the injury consists only of economic loss to the subject of the contract
itself, the action sounds in contract alone. Id. It is also instructive to examine the duties that the
defendant has allegedly breached. If the defendant's conduct would give rise to liability
independent of the fact that a contract exists between the parties, the plaintiff's claim may also
sound in tort. Southwestern Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991). 
Conversely, if the defendant's conduct would give rise to liability only because it breaches the
parties' agreement, the plaintiff's claim ordinarily sounds only in contract. Id.

 The distinction between violating a contractual duty and violating the common-law
duty of due care is illustrated by Montgomery Ward & Co. v. Scharrenbeck, 204 S.W.2d 508
(Tex. 1947). In Scharrenbeck, the defendant was hired to repair a water heater in plaintiff's attic. 
Id. at 508-09. When the heater subsequently malfunctioned and ignited the roof, destroying the
house and its contents, the plaintiff sued in tort. Id. at 509. The supreme court held that the
defendant's negligence in repairing the heater gave rise to a tort claim despite the contractual
context, noting that "[a] contract may create the state of things which furnishes the occasion of
a tort." Id. at 510. The Texas Supreme Court recently summarized and reaffirmed the rationale
of Scharrenbeck:



Although the contract obligated the defendant to put the water heater back in good
working order, the law also implied a duty to the defendant to act with reasonable
skill and diligence in making the repairs so as not to injure a person or property
by his performance. In failing to repair the water heater properly, the defendant
breached its contract. In burning down plaintiff's home, the defendant breached
a common-law duty as well, thereby providing a basis for plaintiff's recovery in
tort.



DeLanney, 809 S.W.2d at 494.

 It appears that Espey's negligence, if any, in performing the Draw Inspection
Contract caused no injury beyond economic loss to the subject of the contract itself. The purpose
of the contract was to provide certain assurances that the construction would go according to
plan. (5) Thomson now complains that these measures failed, and that as a result the building is
defective. This injury--the mere failure to receive the benefit of the bargain--does not give rise to
a tort cause of action. Examination of the duties involved supports this conclusion. Absent the
contract, Espey had no duty whatsoever to inspect the construction site, or even to report
problems it inadvertently discovered. Consequently, Espey's performance under the contract,
however negligent, could violate only a contractual duty unless, as in Scharrenbeck, the
negligence caused damage beyond the subject of the contract itself.

 The court's reasoning in 2314 Lincoln Park West Condominium Ass'n v. Mann,
Gin, Ebel & Frazier, Ltd., 555 N.E.2d 346 (Ill. 1990), cited by Espey, also supports our
conclusion. In that case, the Illinois Supreme Court concluded that the economic loss rule barred
tort recovery against an architectural firm for defects in a building it had designed: "`Economic
loss' has been defined as `damages for inadequate value, costs of repair and replacement of the
defective product, or consequent loss of profits--without any claim of personal injury or damage
to other property . . . .'" Id. at 348 (emphasis added) (quoting Moorman Mfg. Co. v. National
Tank Co., 435 N.E.2d 443 (Ill. 1982)). The court concluded that since the plaintiff complained
only of inadequacies in the building that was the subject of the contract, the plaintiff could recover
only in contract. 555 N.E.2d at 350-51.

 In contrast, Espey's alleged negligence in performing the Scope of Services
Contract may give rise to a tort cause of action. Thomson alleges that Espey's negligence in
designing the drainage system and testing soil quality has caused damage to other parts of the
apartment complex. Specifically, he alleges that certain buildings suffer from "cracking walls,
doors which will not fit properly, mildew, standing water, shifting and other problems." He
further alleges that the drainage plan was designed in such a way that water pools form in one area
of the complex, blocking a street and spilling onto adjacent property.

 Such damage is beyond the subject of the contract itself, distinguishing this case
from Jim Walter Homes, wherein the defendant was contractually obligated to provide the entire
house. See Jim Walter Homes, 711 S.W.2d at 617. If Thomson were merely complaining that
the drainage system was inadequate and that he had been forced to repair or improve it, he would
have only a contractual claim. Likewise, if Thomson were merely complaining that the soil
testing services were inadequate and that he had been forced to supplement Espey's services at
his own expense, he would have only a contractual claim. However, to the extent that the alleged
inadequacies caused damage to parts of the property beyond Espey's contract, Thomson also has
a tort claim.

 Again, examination of the duties involved supports this conclusion. In Jim Walter
Homes, the plaintiff's right to the house derived entirely from his contract with the defendant. 
Here, on the other hand, the contract with Espey provides only one portion of a larger whole, and
damage to other parts of the complex is not merely economic loss to the subject of the contract
itself. The Scope of Services Contract imposed on Espey a contractual duty to perform specified
services for Hamilton-Woodard. At the same time, however, Espey had an independent duty not
to negligently damage Thomson's property or the property of his neighbors. If, as Thomson
alleges, incompetent engineering services have damaged his building, then Espey may be liable
for that negligence in tort.

 We hold that, because of the economic loss rule, summary judgment was
appropriate with respect to Thomson's negligence claims related to Espey's services under the
Draw Inspection Contract. Likewise, Thomson's tort causes of action for negligent
misrepresentation and fraud derived from the Draw Inspection Contract are also barred by the
economic loss rule. We overrule the portion of point of error five relating to tort claims arising
from the Draw Inspection Contract. (6) However, we sustain the portion of Thomson's fifth point
of error concerning tort actions arising from the Scope of Services Contract.


 

C.  Statute of Limitations

 As an independent ground for summary judgment, Espey argues that Thomson's
negligence claims are barred by the two-year statute of limitations. Tex. Civ. Prac. & Rem. Code
Ann. § 16.003 (West 1986). Espey performed all of its services by July 1986, when the
apartment complex was substantially complete; Thomson did not file suit until October 1988. 
Thomson argues that despite the lapse of more than two years, his negligence actions are not
barred because the statute of limitations was tolled by the discovery rule.

 For purposes of application of a statute of limitations, a cause of action generally
accrues when the wrongful act causes an injury, regardless of when the plaintiff learns of the
injury. Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 351 (Tex. 1990). The discovery rule
is an exception to this general rule. Id. When applicable, the discovery rule provides that the
limitations period runs from the date the plaintiff discovers or should, in the exercise of
reasonable care and diligence, have discovered the nature of his injury. Id.; Snyder v. Eanes
Indep. Sch. Dist., 860 S.W.2d 692, 699 (Tex. App.Austin 1993, writ denied). However, the
discovery rule applies only to causes of action that can be characterized as "inherently
undiscoverable," such as fraud, credit libel, and medical and legal malpractice. Snyder, 860
S.W.2d at 699-700. The discovery rule is appropriate for these causes of action because it is
inherently difficult for the injured party to learn of the negligent act or omission. Id. at 700.

 We believe that an action for negligence in the performance of engineering services
qualifies for application of the discovery rule. Engineering consultants are hired precisely because
ordinary persons--even general contractors--may be unable to distinguish suitable drainage systems
from unsuitable ones. Having engaged an engineer to remedy his own lack of expertise, a general
contractor cannot be expected to assess the competence of the engineer's work before there is an
opportunity to test the final product. In this case, the v 

summary judgment evidence did not conclusively establish that a layperson could perceive any
problems with Espey's services before the flooding occurred and the damage to the buildings
became manifest. We sustain point of error four with regard to the discovery rule tolling the
statute of limitations as to claims of negligence in Espey's performance of the Scope of Services
Contract. (7)



CONCLUSION


 We reverse the trial court's judgment as to Thomson's negligence claims relating
to Espey's services performed under the Scope of Services Contract, and we sever and remand 

that portion of the cause to the trial court for further proceedings. We affirm the remainder of
the judgment.



 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and B. A. Smith

Reversed and Remanded in Part; Affirmed in Part

Filed: May 24, 1995

Publish
1.   Plaintiffs' Original Petition alleges, among other defects, "933 individual items of
deficient construction" in the interiors of the apartment units.
2.   Thomson also named Woodard, Hamilton, and the Hamilton-Woodard Company as
defendants. Thomson's claims against those defendants were severed after Woodard and
Hamilton filed for bankruptcy.
3.   The full title of the contract is "Scope of Services and Fee Schedule for Consulting
Engineering Services Associated with the 9.8-Acre Tract Known as Garden Villa Estates."
4.   With regard to the subcontract at issue in that case, the B & C Construction court
noted that "there is nothing in the instrument pertaining to, or stating that the building was
being constructed for, Grain Handling [the owner]." 521 S.W.2d at 101. We do not interpret
this to mean that third-party beneficiary status can be established merely by a showing that the
contract contains language "pertaining to," or indicating that a building is being constructed
for, a third party. Indeed, B & C Construction reaffirms the "clearly apparent" standard later
in the same paragraph. Id. at 101-02 ("Thus, it does not clearly appear from the terms of the
subcontract itself that the contracting parties intended it was made for the benefit of Grain
Handling.").
5.   There is some dispute as to the precise scope of Espey's inspection duties under the
contract. However, this disagreement is not material to our consideration. The
important point is that the subject of the contract was some degree of assurance that the
construction would go according to plan.
6.   Espey also moved for summary judgment on the ground that any defective
construction techniques Espey should have discovered in performing its inspections were
techniques implemented by, and thus fully known to, Woodard and Hamilton. Espey
asserted that such knowledge, being known to Woodard and Hamilton, must be imputed
to Thomson and, therefore, Thomson waived or is estopped from making any negligence
claims regarding Espey's inspection services. Thomson's sixth point of error challenges
this ground. Since we will affirm the summary judgment with respect to all causes of
action arising out of Espey's inspection services, we need not address the issues raised by
point of error six.
7.   Thomson's first point of error is simply a Malooly Brothers point which, given our
discussion of points of error two through six, requires no additional analysis by this Court. 
See Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970).