# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-05-00493-CV

**Munters Euroform GmbH, Appellant**

**v.**

**American National Power, Inc. and Hays Energy Limited Partnership, Appellees**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. 02-1232, HONORABLE RONALD G. CARR, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw the opinion and judgment issued August 31, 2009, and substitute the following opinion and judgment in their place. We deny appellant's motion for rehearing.

Munters Euroform GmbH appeals from a judgment in favor of appellees American National Power, Inc. and Hays Energy Limited Partnership for damage to a construction project. Euroform contends that the judgment is erroneous because the appellees' claims are within the waiver of subrogation included in the underlying construction contract. Euroform also contends that the judgment is erroneous because Hays's claims were barred by the economic loss doctrine. We affirm.

Appellees[1] hired Alstom Power, Inc. to build a gas-fired power plant. Each turbine is installed inside of an air filter house which also contains air filters and an evaporative cooling system. Although the parties agreed in paragraph 26.2 of the Construction Contract that Alstom would buy builder's risk insurance that named appellees as the loss payee, the parties also agreed in paragraph 26.5 that appellees retained the right to purchase insurance. For insurance purchased under paragraph 26.2, the parties agreed that, "[a]s respects the Builder's Risk, Marine and Delayed Opening insurance, subrogation is waived in favor of the Contractor, all Subcontractors, the Owner and their respective officers, agents and employees." Paragraph 26.5 provided in part as follows:

> The Owner retains the right to arrange for the insurance described in Sections 26.2(a) and 26.2(b) covering the interests of all interested parties (the Owner, Contractor, the independent engineer and Subcontractors); provided that Contractor has the right to approve the wording in such insurance policies. If the Owner arranges such insurance, costs and premiums on insured claims shall be paid by the Owner, and the insurance coverage must contain the following: . . . (c) additional insured status and waiver of subrogation to all parties . . .

The parties agreed in paragraph 9.5 that subcontractors were not third-party beneficiaries of the construction contract "except to the extent expressly provided for in this Contract."

Appellees purchased insurance from Factory Mutual Insurance Company. In addition to appellees, the policy expressly lists among the insured "Vend[o]rs and/or suppliers and/or engineering consultants and/or subcontractors of any tier and/or other parties to the extent required

---

[1] Although the construction contract and the insurance contract name only Hays as the owner of the property and as the insured, appellees refer to themselves in the singular as American National Power. Because Euroform does not challenge this nomenclature, we will treat appellees together as the owners of the damaged property, as the entity that entered the contract with Euroform, and as the insured.

2

by contract" for "loss or damage arising out of their site activities only . . . for their respective rights and interests as described in their contracts or agreements." The insurance policy contains the following language under the heading "Subrogation Waiver":

> Upon the payment of any claim under this Policy, the Insurers shall be subrogated to all the rights and remedies of the Insured arising out of such claim against any person or corporation whatsoever except that the Insurers hereby waive all rights which they may have acquired by a payment of a claim under this Policy to recover the amount so paid from any person or corporation with whom the Insured, prior to the occurrence of the loss or damage, shall have agreed to waive their rights to recovery in respect of any loss or damage which may be caused by such person or corporation.

> The Insurers hereby agree to waive all rights of subrogation or action which they may have or acquire against any of the parties included in the Insured or otherwise indemnified by this Policy, arising out of one loss or event in respect of which a claim is made thereunder.

There is no contract directly between appellees and Euroform. Euroform supplied the evaporative cooling system to one subcontractor and, as a subcontractor itself of Alstom, trained personnel of another subcontractor who installed the evaporative cooling systems. The subcontracting agreement in which Euroform agreed to supervise the installation states that Euroform would provide insurance coverage for its supervisory employees and that Euroform would be liable to Alstom for all damages incurred on the basis of a "culpable" violation by Euroform of the agreement. Euroform's subcontract with Alstom is silent regarding subrogation.

A fire started during installation of the evaporative cooling system, damaging the filter house in which that system was being installed. Factory Mutual paid appellees $1,488,458 under the policy for property damage related to the fire, then filed suit in appellees' name seeking to recover damages from Munters Corporation, Euroform, and others on various theories. Appellees

3

alleged that the fire was caused by negligence as well as manufacturing and marketing defects. Euroform sought summary judgment contending that appellees had waived their claims against Euroform and that, consequently, Factory Mutual had no claims to which they could be subrogated. The trial court denied the motion for summary judgment. The jury found that the fire was negligently caused, that appellees incurred $1,488,458 in damages as a result, and that Euroform was responsible for twenty percent of the damages. Another subcontractor was found responsible for the remaining share of damages. Euroform filed a motion for judgment notwithstanding the verdict, contending that appellees and Factory Mutual waived their rights to subrogation as a matter of law. Euroform reiterated the argument it had made in its motion for summary judgment that the clause in the construction contract stating that "subrogation is waived" against subcontractors, combined with the clause in the insurance contract in which Factory Mutual agrees it cannot be subrogated to claims waived by appellees, results in a waiver by Factory Mutual of subrogation rights against appellees' subcontractors. The trial court denied the motion and entered judgment based on the verdict.

Euroform contends that the trial court erred by rendering judgment against it because subrogation was waived under both the construction and the insurance contracts. We review the denial of a motion for judgment notwithstanding the verdict under a no-evidence standard. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). We credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* at *2 (citing *Central Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007)). We will uphold a judgment

4

based on the jury's finding if more than a scintilla of competent evidence supports it. *Id.* (citing *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003) (per curiam)). We must decide whether the evidence at trial could allow reasonable and fair-minded people to reach the verdict under review. *Id.* (citing *City of Keller*, 168 S.W.3d at 827). Similar standards govern review of motions for summary judgment and directed verdict. *Keller*, 168 S.W.3d at 823, 825.

This case turns on contract interpretation. Subrogation rights may be waived or altered by contract. *Trinity Universal Ins. Co. v. Bill Cox Constr., Inc.*, 75 S.W.3d 6, 8 (Tex. App.—San Antonio 2001, no pet.). Courts must try to give effect to all contractual terms so none will be rendered meaningless. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). Courts must read all provisions together and give each provision its intended effect. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994).

Euroform contends that the clear intent of appellees and the general contractor was to shift liability to the insurer by preventing the insurer from pursuing allegedly negligent parties. Euroform asserts that they intended to achieve this goal by providing that subrogation was waived in the construction contract and in the insurance policy issued pursuant to that contract. Appellees contend that Euroform was not a third-party beneficiary of the construction contract, and that the construction contract did not waive subrogation against a subcontractor because it did not release the owner's claims against the subcontractor. Appellees also claim that Euroform lacks standing to enforce the terms of the insurance policy and that the insurance policy failed to waive subrogation because the construction contract did not release appellees' claims against subcontractors. They finally contend that the "additional insured" provisions in the construction contract did not waive

5

subrogation because Euroform was not an additional insured because it lacked an insurable interest in the property and because it damaged the property of others.

Although the construction contract contains language that declares that "subrogation is waived" as to various parties,[2] the right to subrogation belongs to the insurer and is not the owner's or the contractor's to waive. Owners and contractors can waive their claims against each other. *See Temple Eastex, Inc. v. Old Orchard Creek Partners, Ltd.*, 848 S.W.2d 724, 730-31 (Tex. App.—Dallas 1992, writ denied); *see also Trinity Universal Ins. Co.*, 75 S.W.3d at 13-15. Because a subrogee insurer stands in the shoes of the subrogor insured with the insurer's claims limited to those the subrogor could bring and subject to the same defenses, the subrogor's waiver of its claims extinguishes the subrogee's right to bring those claims in the subrogor's name. *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007). However, the right to subrogation belongs to the insurer. *Austin Indep. Sch. Dist. v. H.C. Beck Partners*, No. 03-07-00228-CV, 2009 Tex. App. LEXIS 1756, at *7, n.3 (Tex. App.—Austin Mar. 13, 2009, pet. denied) (mem. op.). Although the subrogor can waive a claim and thereby prevent a subrogee from pursuing it, the subrogee's right to pursue otherwise vital claims cannot be waived by the subrogor. *See id*.

The parties to the construction contract did not waive their right to pursue claims against each other, but declared that "subrogation is waived in favor of the Contractor, all Subcontractors, the Owner and their respective officers, agents and employees." Appellees did not

---

[2] The contract states in relevant part that "subrogation is waived in favor of . . . all Subcontractors."

thereby or elsewhere waive their right to pursue claims against Alstom (or, by extension, Euroform).

Thus, cases holding that owners' waivers of their right to pursue claims against contractors prevent the owners' insurers from pursuing claims against the contractors and subcontractors (as third-party beneficiaries of the main contract) do not control this case. *See, e.g.*, *Trinity Universal*, 75 S.W.3d at 9, 11-12; *Temple Eastex*, 848 S.W.2d at 729-31. The parties to the construction contract did not have the power to directly waive Factory Mutual's subrogation rights. Although we must try to give effect to all terms of a contract, we cannot interpret contracts in ways that allow parties to exercise powers they do not possess, particularly when that exercise purports to deprive another party of its rights. The subrogation waiver clause may have some meaning, but it does not mean either that appellees waived their right to sue subcontractors or that appellees waived Factory Mutual's right to subrogation. The right to subrogation is waived in this case only if Factory Mutual waived its subrogation rights.

We find no evidence that Factory Mutual waived its subrogation rights. The insurance contract demonstrates the contrary. The parties agreed as follows:

> Upon the payment of any claim under this Policy, the Insurers **shall be subrogated** to all the rights and remedies of the Insured arising out of such claim against any person or corporation whatsoever **except that the Insurers hereby waive all rights** which they may have acquired by a payment of a claim under this Policy **to recover** the amount so paid **from any person or corporation with whom** *the Insured*, prior to the occurrence of the loss or damage, **shall have agreed to waive their rights to recovery in respect of any loss or damage which may be caused by such person or corporation**.

This is not a waiver by Factory Mutual of its right to subrogation, but merely an acknowledgment that a waiver of the claimant's claims would bar the insurer from pursuing the claims waived by the

7

claimant. As discussed, there is no waiver by appellees of any of their claims in evidence. Appellees declared that "subrogation is waived," but that does not constitute a waiver of appellees' claims, and appellees lacked the power to waive Factory Mutual's right. At most, the construction contract appears to contain a commitment by appellees to obtain a waiver of subrogation from their insurer. That is not, in itself, either a waiver of appellees' claims or a waiver of the insurer's subrogation rights. *See H.C. Beck*, 2009 Tex. App. LEXIS 1756, at *5-6, *9-10.

Euroform also contends that appellees waived their right to subrogation by agreeing to include subcontractors as additional insureds. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a); *see also Plano Lincoln Mercury, Inc. v. Roberts*, 167 S.W.3d 616, 620 (Tex. App.—Dallas 2005, no pet.). Appellees contend that Euroform did not own any property on site, so it could not be an additional insured under a property insurance policy. Appellees also argue that Euroform's negligent damage of other insured's property prevents Euroform from claiming protection under any subrogation waiver. The trial record does not reveal that this argument was raised at trial. Euroform did not raise this argument in its motion for partial summary judgment, its motion for directed verdict, or its motion for judgment notwithstanding the verdict. It is not the type of argument on which we can reverse when raised for the first time on appeal. Euroform has not shown error by the trial court in failing to grant relief on an argument not presented to the trial court.

8

Euroform also appeals the denial of its motion for directed verdict premised on the ground that appellees' claims were barred by the economic loss doctrine. The economic loss doctrine bars recovery in negligence or strict liability when a product fails, the damage or loss is the subject of a contract, and the damage or loss is limited to the product itself. *Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007); *Pugh v. General Terrazzo*, 243 S.W.3d 84, 91 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). It does not preclude recovery in negligence or strict liability if the defective product also causes physical harm to the ultimate user or consumer or to other property of the user or consumer. *Equistar*, 240 S.W.3d at 867; *Pugh*, 243 S.W.3d at 91. Euroform argues that the scope of the prohibitive effect of the economic loss doctrine is determined by the general contract between Alstom and appellees rather than any subcontract involving Euroform. *See Pugh*, 243 S.W.3d at 92 (homebuyer could not recover in tort from exterior veneer supplier even though product caused damage to remainder of house; homebuyer had recourse through contract with general contractor). The *Pugh* case and authorities cited therein stand for the proposition that the manufacturer of a component that is integrated into a larger product and that fails and damages the larger product cannot be liable in negligence and strict liability to the purchaser of the larger product. *Id*. (citing *Murray v. Ford Motor Co.*, 97 S.W.3d 888, 891 (Tex. App.—Dallas 2003, no pet.) (truck owner could not sue maker of wire harness that failed, causing truck fire, for damage to truck; could sue for personal property lost); *American Eagle Ins. Co. v. United Techs. Corp.*, 48 F.3d 142, 145 (5th Cir. 1995) (airplane owner had no tort claim against engine manufacturer for damage to hull of plane after failure of engine caused crash); *Hininger v. Case Corp.*, 23 F.3d 124, 126-27 (5th Cir.1994) (economic loss doctrine protected manufacturer of drive wheels installed on combine)).

We note initially that this case is factually distinct from the cases Euroform cites. Unlike in those cases, the damage in this case was not caused by the malfunction of a product fully integrated into a larger product. The fire in this case was sparked by the installation process, not the function or malfunction of the evaporative cooler. Although appellees argued that the fire was caused in part by the design of the product, the jury found that there was not a manufacturing defect, a design defect, or a marketing defect in the evaporative cooler. This case is thus factually distinct from cases in which the courts tie the preclusive effect of the economic loss doctrine to the "failure of a product" causing harm. This case is closer to *Pugh*, in which the trial court allowed plaintiffs to allege that the damages to their house resulted from the veneer supplier's negligent instructions on how to install its veneer. *See Pugh*, 243 S.W.3d at 86-87. However, in *Pugh*, the installation was alleged to have impaired the veneer from protecting the house as designed, *see id*. at 87, whereas in this case the installation process damaged the cooler and associated structures before the cooler was used as designed. The damages in this case were not caused by the failure or malfunction of the product (the evaporative cooler)—a condition repeatedly invoked in the description of the conditions giving rise to the economic loss doctrine's prohibition of extra-contractual remedies. *See Equistar*, 240 S.W.3d at 867; *Pugh*, 243 S.W.3d at 90; *Murray*, 97 S.W.3d at 891-93; *see also American Eagle*, 48 F.3d at 145-46.

We find other cases more applicable to the circumstances presented here. The supreme court held that a refinery owner's contract to purchase a machine unit does not bar the refinery owner's strict liability claim against a subcontractor that supplied a component of the unit when the component part's performance damages itself, the unit, and other property. *Signal Oil*

*& Gas v. Universal Oil Prods.*, 572 S.W.2d 320, 322-25 (Tex. 1978). The *Signal Oil* opinion is consistent with the supreme court's earlier decision that, when a misrepaired water heater caused a fire that destroyed a house, the homeowner could sue the installer in tort for the damages to property outside the scope of the contract. *See Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 509-10 (Tex. 1947).

More recently, this Court considered a property owner's tort claims against a subcontractor who had two subcontracts on a project to build apartments. *Thomson v. Espey Huston & Assocs., Inc.*, 899 S.W.2d 415, 421-22 (Tex. App.—Austin 1995, no writ). The subcontracts were with the general contractor, not directly with the property owner. *Id.* at 417. One subcontract required the subcontractor to perform engineering and design services regarding drainage and on the project. *Id.* The other required the subcontractor to inspect the construction site to inform the lender whether building was proceeding according to the plan. *Id.* Years after construction was complete, the property owner sued the subcontractor, alleging that the subcontractor's negligent drainage and water runoff designs damaged the apartments, such as by causing the walls to crack. *Id.* This Court held that the alleged failure to properly inspect resulted in economic loss to the subject of the contract itself (failure to receive the benefit of the bargain) and that tort remedies were, therefore, barred by the economic loss doctrine. *Id.* at 421. This Court held, however, that the allegations relating to the design of the drainage engineering and design services concerned damages to aspects of the project within the scope of the general contract that were beyond the scope of the subcontract. *Id.* Despite the property owner's potential remedies under the general contract, this Court permitted the property owner to pursue tort remedies against the subcontractor for damages arising from

11

the performance of the engineering subcontract that exceeded the scope of the engineering subcontract. *Id*. at 421-22. This holding was followed by the Texarkana court in *Goose Creek Consol. Indep. Sch. Dist. v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 494-95 (Tex. App.—Texarkana 2002, pet. denied). When a plumbing subcontractor's installations failed and damaged elementary schools, that court held that the school district's remedies under its contract with the general contractor did not bar its negligence claims against the subcontractor. *Id.* The court held that the scope of the subcontract—not the entire scope of the general contract—defined the scope of the economic loss doctrine's bar of negligence claims. *Id.*

To be entitled to a directed verdict, Euroform was required to establish as a matter of law that the scope of its subcontract included all of the property that was damaged by the fire. *See Thomson*, 899 S.W.2d at 421-22; *see also Jarrar's Plumbing*, 74 S.W.3d at 494-95. It did not. Euroform supplied the evaporative cooler and instructed another subcontractor on how to install it. The fire damaged property that exceeded the scope of both subcontracts, much like the systems designed and installed by the subcontractor defendants in *Thomson* and *Jarrar's Plumbing* damaged the larger structures built under more encompassing contracts. *See Thomson*, 899 S.W.2d at 421-22; *see also Jarrar's Plumbing*, 74 S.W.3d at 494-95. The economic loss doctrine does not bar the negligence claims raised in this case. The trial court properly denied the motion for directed verdict.

12

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Puryear, Pemberton and Waldrop

Affirmed on Motion for Rehearing

Filed:   December 31, 2009