**AFFIRM; Opinion Filed August 19, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00945-CV

### TREBUCHET SIEGE CORPORATION AND DALLAS FT. WORTH METROPLEX ARCHITECTURE, INC., Appellants

### V.

### PAVECON COMMERCIAL CONCRETE, LTD., Appellee

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 09-17344**

## MEMORANDUM OPINION

Before Justices Moseley, Lang, and Brown
Opinion by Justice Brown

This is an appeal from a summary judgment rendered against appellants Trebuchet Siege Corporation and Dallas Ft. Worth Metroplex Architecture, Inc. (DFM) on counterclaims appellants asserted against Pavecon Commercial Concrete, Ltd. In two issues, appellants contend the trial court erred in sustaining Pavecon's objections to portions of appellants' summary-judgment evidence and granting summary judgment for Pavecon. We affirm.

### BACKGROUND

In 2007, Trebuchet contracted with DFM to build a large wedding facility in Carrollton, Texas. DFM served as the architect and contractor for the project. DFM hired Pavecon as a subcontractor on the project to furnish concrete services, labor, and materials worth nearly

$600,000. In particular, Pavecon was to provide and pour the concrete that would form the foundation slabs for four buildings. The foundation slabs were to be five inches thick with a strength of 4,000 pounds per square inch and constructed using a certain mix of concrete. Pavecon provided the requested concrete-related services from August 2008 through May 2009. During that time, Pavecon sent invoices for its services, each of which was paid, less a ten-percent retainage. After completing its work, Pavecon then billed for the total retainage amount of $58,418.54. Pavecon filed this lawsuit following non-payment of that amount.

In its live pleading, Pavecon asserted various claims against appellants, including breach of contract, and sought to recover the $58,418.54 it claimed remained due and owing. Pavecon also sought an order foreclosing on the mechanics' and materialmen's lien it filed against the property. Appellants generally denied Pavecon's allegations and raised various affirmative defenses. Trebuchet denied the existence of a contract between it and Pavecon. DFM alleged that it was excused from performing under its contract with Pavecon due to Pavecon's prior material breach of the contract.

Appellants also asserted counterclaims against Pavecon because of problems related to Pavecon's services, such as excessive cracking in the concrete floors. DFM counterclaimed for breach of contract, alleging Pavecon breached its agreement with DFM by (1) failing to properly prepare and pour the concrete at the project and (2) supplying and incorporating the incorrect cement into the foundation slabs. DFM alleged that as a result of Pavecon's breaches, DFM has been damaged in the amount of at least $400,000, a figure which represents the repair costs for Pavecon's breaches and substandard work under the contract. Both appellants counterclaimed for removal of the lien and negligence. By their negligence counterclaim, appellants alleged Pavecon "had a duty to provide quality materials and an experienced crew and to prepare and pour the concrete in compliance with accepted industry standards." Appellants claimed

–2–

Pavecon's breaches of those duties damaged them in an amount expected to exceed $400,000, "to repair the damaged flooring, or in the alternative, remove and replace the flooring, and to repair the stucco façade and interior walls."

Pavecon moved for partial summary judgment on the breach-of-contract and negligence counterclaims. Specifically, Pavecon filed a no-evidence motion for summary judgment on DFM's breach-of-contract counterclaim and a combined no-evidence and traditional motion for summary judgment on appellants' negligence counterclaim. Pavecon asserted as the basis for its traditional summary-judgment motion that the economic loss rule barred appellants' recovery on their negligence counterclaim because the only loss or damages claimed was the economic damage to the subject of a contract. Pavecon attached as summary-judgment evidence a "proposed subcontract" between it and DFM, which contained handwritten edits and was signed only by a representative of Pavecon. The "proposed subcontract" included Pavecon's bid on the project, which described the services it was to perform.

In response, appellants offered the affidavits of Sandra Harrison, the president of Trebuchet and vice-president of DFM, and Jerald Kunkel, a professional engineer, who was hired to opine as to the cause of the cracking in the concrete floors. Kunkel prepared a report of his observations and findings, which he included as an attachment to his affidavit. Attached to Harrison's affidavit was a different version of the contract between DFM and Pavecon. Both the "proposed subcontract" submitted by Pavecon and the version attached to Harrison's affidavit were based on the standard form agreement between contractors and subcontractors. Harrison's version also included Pavecon's bid on the project, which was signed by a Pavecon representative. Pavecon objected to two statements contained in Harrison's affidavit, arguing the statements were conclusory.

The trial court signed an order granting Pavecon's motion in its entirety without specifying the basis for its ruling. In a separate order, the trial court also sustained Pavecon's objections to both statements in Harrison's affidavit. Thereafter, Pavecon filed a notice of nonsuit, stating it no longer desired to prosecute its claims. The trial court signed an order granting the notice of nonsuit and dismissed Pavecon's claims without prejudice.

## DISCUSSION

Appellants raise two issues on appeal in which they contend the trial court erred when it sustained Pavecon's objections to the statements in Harrison's affidavit and granted summary judgment for Pavecon on their counterclaims. We address these issues together.

### Legal Standards

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In a no-evidence motion for summary judgment, the moving party must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claim on which the nonmovant would have the burden of proof. *See* TEX. R. CIV. P. 166a(i). When we review a no-evidence summary-judgment motion, we ask whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the challenged elements. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 833 (Tex. App.—Dallas 2000, no pet.). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). In contrast, less than a scintilla of evidence exists if the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact's existence, or "if it is so slight as to make any inference a guess." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004); *Smith v. Deneve*, 285 S.W.3d 904, 909 (Tex. App.—Dallas 2009, no pet.).

–4–

A party moving for traditional summary judgment must establish that no genuine issue of material facts exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.—Dallas 2012, no pet.). When we review a traditional summary judgment granted in favor of the party without the burden of proof, we determine whether that party disproved at least one element of the nonmovant's claim or conclusively proved every element of an affirmative defense. *Holloway*, 380 S.W.3d at 319–20. A matter is conclusively established if ordinary minds cannot differ as to the conclusions to be drawn from the evidence. *Id.* at 320.

In reviewing both a no-evidence and traditional summary judgment, we examine the evidence in the light most favorable to the nonmovant and indulge every reasonable inference and resolve any doubts against the movant. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994). When, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we will affirm the summary judgment if any of the theories presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

We review a trial court's decision to admit or exclude summary-judgment evidence under an abuse of discretion standard. *Holloway*, 380 S.W.3d at 320. A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

**Summary Judgment on DFM's Breach-of-Contract Counterclaim**

We first consider the propriety of the no-evidence summary judgment granted on DFM's breach-of-contract counterclaim. A claim for breach of contract requires proof of the following elements: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff

as a result of that breach. *Holloway*, 380 S.W.3d at 324 (citing *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 882 (Tex. App.—Dallas 2007, no pet.)). As part of its second issue, DFM argues the trial court erred in granting summary judgment for Pavecon on this claim because DFM produced more than a scintilla of evidence on each element of its claim. In its summary-judgment motion, Pavecon challenged all four elements on no-evidence grounds, and on appeal, Pavecon focuses its challenge on two of those elements, countering that DFM produced no evidence of an actual breach of the contract by Pavecon or any damages incurred by DFM. We agree that DFM failed to present more than a scintilla of evidence to raise a fact issue on the fourth element of its claim, that DFM sustained damages as a result of Pavecon's breach.

DFM's breach-of-contract counterclaim is based on DFM's allegation that Pavecon's inferior performance under the contract caused DFM's injury, which was the damage to the concrete flooring. DFM sought as damages "the repair costs for [Pavecon's] breaches and substandard and inferior work under the Contract." In its appellate brief, DFM relies on the affidavits of Harrison and Kunkel as well as the observations and findings made by Kunkel in his report that DFM offered as summary-judgment evidence to raise a fact issue on the damages element. Harrison testified to the excessive cracking that appeared on the polished concrete flooring inside the buildings causing damage to already-completed work on the project and the pooling of water in the low areas of the floor. She also testified that the "appearance of the Project has been damaged by Pavecon's poor work." Kunkel similarly testified to the "excessive cracking on the foundations slabs," and in his report, he described and documented the damages he concluded were caused by Pavecon's work on the project. Kunkel opined that Pavecon's labor and materials caused the flooring to crack excessively and prevented the floors from being properly finished and polished. DFM claims this evidence would allow reasonable jurors "to understand that damages existed due to [Pavecon's] breach of contract."

But to recover damages on its breach-of-contract claim, DFM must establish that it suffered some pecuniary loss as a result of the breach. *See S. Elec. Servs., Inc. v. City of Houston*, 355 S.W.3d 319, 324 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex. App.—El Paso 2000, no pet.). The losses sustained by DFM also must be the natural, probable, and foreseeable consequence of Pavecon's conduct. *See Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981); *S. Elec. Servs., Inc.*, 355 S.W.3d at 324. The summary-judgment evidence on which DFM relies to raise a fact issue on the damages it incurred concentrates on the "damages to the Project" as described and documented by Harrison and Kunkel. And while DFM claims "the record is filled with evidence that [Pavecon] caused the damage to the Project," there is an absence of evidence linking the damages to the project to some pecuniary loss suffered by DFM. In particular, neither affidavit (nor the related attachments) relied on by DFM shows that DFM, as opposed to Trebuchet, was the entity that sustained any damages.

In his report, Kunkel talked about various fixes that had been done to address the cracking in the concrete floors. He observed that a crack-filling treatment had been applied to "several of the cracks" and a "polishing contractor" reported numerous failed attempts to properly polish the floors. Kunkel also offered various recommendations for addressing the current condition of the floors, including the option of removing and replacing the floors and the option of repairing the cracks with a particular crack filler. Kunkel stated that "[l]eaving the floor slabs in their current condition is not a viable option" because the "cracking and inconsistent appearance of the floor slabs makes them undesirable for public use and unacceptable to the owner." But while Kunkel's statements about the application of a crack filler, attempts at floor polishing, and other options for fixing the cracked flooring could lead to an inference that these fixes cost money, there is nothing in Kunkel's report from which we

could infer that DFM was the entity that made any of those repairs or incurred the expenses associated with applying a crack filler or polishing the floors. Kunkel makes no direct reference to the contractor DFM. And at best, Kunkel's report supports an inference that Trebuchet incurred the additional expenses related to the allegedly damaged flooring. Kunkel states that the current condition of the floors is unacceptable to the owner, Trebuchet, and it was Kunkel's understanding that the polishing contractor reported its attempts to polish the floors to the owner.

Likewise, nothing in the summary-judgment record indicates that DFM was tasked or would be tasked with fixing the problems allegedly caused by Pavecon's work. There seems to be no dispute that DFM "made a contract for construction" with Trebuchet, the owner of the wedding facility project, and that DFM as contractor then hired Pavecon as the subcontractor to provide concrete-related services. Typically, when a subcontractor's performance falls short of what the owner expects, it is the contractor that makes up the difference. *See Thomson v. Epsey Huston & Assocs., Inc.*, 899 S.W.2d 415, 419 (Tex. App.—Austin 1995, no writ) (discussing relationships among property owners, general contractors, and subcontractors under generally prevailing contract principles). But here, DFM offered no evidence that it was the entity that incurred the expenses (or would incur expenses) to fix any problems with the floors. Nor did DFM offer summary-judgment evidence that it settled with the owner—Trebuchet—by making the repairs to the cracked floors or lost profit under its contract with Trebuchet because of the repairs it made as a result of Pavecon's performance. The record also does not reveal whether Trebuchet held DFM responsible for the repairs under the "contract for construction" or brought a contract action against DFM for breach of that contract.

DFM points to one statement in Harrison's affidavit to show "sufficient evidence of damages in a no-evidence summary judgment context." Harrison testified in paragraph 13 that "[b]oth DFM and Trebuchet have incurred damages to polish and treat the floors against further

damages." Pavecon objected to this statement, arguing the statement merely recited an unsupported factual conclusion. The trial court sustained the objection. Appellants complain about this ruling in their first issue.

A conclusory statement is one that does not provide the underlying facts to support the statement. *Holloway*, 380 S.W.3d at 323. Conclusory statements are not competent summary-judgment evidence because they are not credible or susceptible to being readily controverted. *Schindler v. Baumann*, 272 S.W.3d 793, 796 (Tex. App.—Dallas 2008, no pet.). Conclusions in an affidavit are insufficient either to support summary judgment or to raise a fact issue in response to a summary-judgment motion. *Holloway*, 380 S.W.3d at 323 (citing *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984)).

We agree that Harrison's statement in paragraph 13 is conclusory and thus, not competent summary-judgment proof. In paragraphs 11 and 12, Harrison testified to the cracking in the floors that she observed at the project and how water continued to surface and pool in the low areas of the floors months after Pavecon poured the foundation. She then simply said in the next paragraph that both appellants have "incurred damages" to polish and treat the floors. But other than stating that the appearance of the project "has been damaged by Pavecon's poor work"— damages which necessarily belong to Trebuchet as the owner of the project—Harrison does not reveal the underlying facts of how or why either DFM or Trebuchet "incurred damages" to polish and treat the floors. *Cf. James L. Gang & Assocs., Inc. v. Abbott Labs., Inc.*, 198 S.W.3d 434, 443 (Tex. App.—Dallas 2006, no pet.) ("[M]ere allegations of expenses without objective facts, figures, or data [do] not amount to any evidence of out-of-pocket damages.") (citing *El Dorado Motors, Inc. v. Koch*, 168 S.W.3d 360, 366 (Tex. App.—Dallas 2005, no pet.)). Harrison does not offer a basis from which to evaluate the actions taken to incur damages—such as state whether such actions were necessary to fix the floors, that these things had to be done to

run the wedding facility, or even that the failure to polish and treat the floors would have affected the profitability of the wedding facility. And given that only DFM alleged a breach-of-contract counterclaim against Pavecon, Harrison made no attempt to provide factual support as to which appellant incurred the damages alleged to have been sustained as a result of Pavecon's work under the contract. By just stating that both appellants "incurred damages," Harrison asserted nothing more than a conclusion, which fails to raise a fact issue on the issue of damages in response to Pavecon's summary-judgment motion. *See Holloway*, 380 S.W.3d at 323. We conclude the trial court did not abuse its discretion in sustaining Pavecon's objection to Harrison's statement. We overrule appellants' first issue to the extent it complains the trial court erred when it sustained Pavecon's objection to the statement in paragraph 13 of Harrison's affidavit.

We conclude DFM adduced no evidence of the essential element of damages sustained as a result of Pavecon's breach, and therefore, the trial court properly granted summary judgment on DFM's breach-of-contract counterclaim. We overrule appellants' second issue to the extent it raises a challenge to the summary judgment granted on this claim.

**Summary Judgment on Appellants' Negligence Counterclaim**

Appellants also argue in their second issue that the trial court erred in granting summary judgment for Pavecon on their negligence counterclaims. A negligence claim requires proof of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). Pavecon filed a combined no-evidence and traditional motion for summary judgment on these claims. Like its breach-of-contract counterclaim, we conclude DFM also brought forward no evidence that Pavecon's breach of a duty, if any, proximately caused any damage to DFM, and therefore the trial court properly granted summary judgment against DFM on this claim. And as

–10–

explained below, we further conclude that because the economic loss rule does not allow Trebuchet to recover on its negligence counterclaim, the trial court also properly granted summary judgment against Trebuchet on this claim.

The economic loss rule is a doctrine that limits the recovery of purely economic damages that are unaccompanied by injury to the plaintiff or its property in actions for negligence. *LAN/STV v. Martin K. Eby Constr. Co.*, No. 11-0810, 2014 WL 2789097, at *1 (Tex. June 20, 2014); *see also Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011) ("[P]arties may be barred from recovering in negligence or strict liability for purely economic losses."). In deciding whether the rule applies, we examine the source of the defendant's duty (considering whether the duty arose out of a contract or whether the duty was imposed by law, independent of the contract) and the nature of the injury (considering whether the economic loss was only "to the subject of a contract itself"). *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). Where the only duty between parties arises from a contract, a breach of that duty will ordinarily sound only in contract, not in tort. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

The economic loss rule has been applied to deny recovery of purely economic losses in actions for negligent performance of services. *LAN/STV*, 2014 WL 2789097, at *6 (citing cases). That is, a plaintiff cannot maintain a tort cause of action against a defendant when its damages are only for economic losses caused by the failure to perform a contract. *Bass v. City of Dallas*, 34 S.W.3d 1, 8 (Tex. App.—Amarillo 2000, no pet.). So, "if a contractual duty is negligently performed, causing only economic loss, only a breach of contract action may be maintained, and an action in tort for negligence is precluded." *Id.* "Economic loss" has been defined as "'damages for inadequate value, costs of repair and replacement of the defective product, or

–11–

consequent loss of profits—*without any claim of personal injury or damage to other property . . . .'"* *Id.* at 9 (quoting *Thomson*, 899 S.W.2d at 421). The economic loss rule not only applies to bar claims against those in a direct contractual relationship but also applies to preclude tort claims between parties who are not in privity. *See id.* at 8–9; *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 695 (Tex. App.—Eastland 2002, no pet.); *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 106–07 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

This was a construction project defined by the agreements among the parties: Trebuchet contracted with DFM to construct a wedding facility; DFM contracted with Pavecon to provide concrete-related services. The only duty Trebuchet alleged Pavecon breached was Pavecon's contractual duty under its contract with DFM. Specifically, Trebuchet alleged Pavecon had a duty "to perform its services in a good and workmanlike manner, and in a manner that would not cause damage" to the property and "to provide quality materials and an experienced crew and to prepare and pour the concrete in compliance with accepted industry standards." And the only loss Trebuchet claims it suffered was an economic loss; the damages alleged were the cost to repair the damaged flooring, which were the same damages alleged by DFM in its breach-of-contract counterclaim, or alternatively, to replace the damaged flooring. *See Bass*, 34 S.W.3d at 8 (economic losses are costs of repair and replacement of the defective product). "[A] duty in tort does not lie under the economic loss rule when the only injury claimed is one for economic damages." *Trans-Gulf Corp.*, 82 S.W.3d at 695. Application of the economic loss rule is particularly appropriate here, where permitting Trebuchet to sue Pavecon for economic loss would disrupt the risk allocations that Trebuchet worked out in its contract with DFM, and that DFM, in turn, worked out in its contract with Pavecon. *See Hou-Tex, Inc.*, 26 S.W.3d at 106–07; *see also LAN/STV*, 2014 WL 2789097, at *7 (recognizing that construction projects operate by

–12–

agreements among the participants and noting that it is "beyond argument that one participant on a construction project cannot recover from another . . . for economic loss caused by negligence").

Although Trebuchet pleaded a negligence claim against Pavecon, Trebuchet is actually seeking to recover for economic losses sustained by virtue of Pavecon's allegedly negligent performance of its contract with DFM. Because the economic loss rule precludes such a claim, Pavecon is entitled to summary judgment.

We conclude the trial court properly granted summary judgment in favor of Pavecon on appellants' negligence counterclaims. Accordingly, we overrule appellants' second issue to the extent it raises a challenge to the summary judgment granted on these claims.

In appellants' first issue, they also complain the trial court erroneously sustained Pavecon's objection to another statement in Harrison's affidavit. Based on our resolution of appellants' issues, however, we need not address this ruling. *See* TEX. R. APP. P. 47.1.

Having overruled appellants' issues, we affirm the trial court's summary judgment.

/Ada Brown/
ADA BROWN
JUSTICE

Moseley, J., dissenting

120945F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TREBUCHET SIEGE CORPORATION
AND DALLAS FT. WORTH
METROPLEX ARCHITECTURE, INC.,
Appellants

No. 05-12-00945-CV          V.

PAVECON COMMERCIAL CONCRETE,
LTD, Appellee

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 09-17344.
Opinion delivered by Justice Brown.
Justices Moseley and Lang participating.

In accordance with this Court's opinion of this date, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that appellee Pavecon Commercial Concrete Ltd. recover its costs of this appeal from appellants Trebuchet Siege Corporation and Dallas Ft. Worth Metroplex Architecture, Inc.

Judgment entered this 19th day of August, 2014.