# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00503-CV

**La Tierra de Simmons Familia, Ltd., Individually and as Assignee of Modelle Brasher Ballard, Robert Gerald Ballard, John Richard Ballard, and Charles Warren Ballard, Appellant**

v.

**Main Event Entertainment, LP; M.E.E.P. Management, LLC; Stonecrest Investments, LLC; Stonecrest Services, Ltd.; SCMR Anderson Arbor Phase III General Partnership; Consort Environments, Inc.; H & S Horizons, LLC; and Spirit Portfolio 2005-4, LP, Appellees**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 09-170-C368, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This suit involves claims arising from the diversion of the natural flow of surface water from one commercial tract of land onto another. La Tierra de Simmons Familia, Ltd. ("La Tierra"), the present owner of the downhill tract, appeals the trial court's summary judgment on its water code, negligence, trespass, nuisance, and fraud claims against the appellees, a number of commercial entities with various relationships to the uphill tract. The trial court held that, as a matter of law, La Tierra lacks standing to assert the claims made in this case, the claims are time-barred, and there is no evidence of damages. We modify the trial court's judgment to reflect only a dismissal of La Tierra's claims for lack of standing and affirm it as modified.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case involves two tracts of commercial property abutting U.S. Highway 183's frontage road in northwest Austin. The uphill property, which is fully developed, is Phase III of the Anderson Arbor development (the "uphill tract"); it employs a drainage system that disperses storm water onto the downhill tract (the "Ballard tract"), which is undeveloped. La Tierra contends that development of the uphill tract wrongfully redirected the flow of 16 acres[1] of storm water onto the Ballard tract compared to five acres of storm water that flowed onto the tract in pre-development conditions. La Tierra contends that the drainage system was designed or constructed in a manner that has damaged and continues to damage the Ballard tract, causing prolonged inundation and saturation even during mild rain events due to changes in the total runoff volume, the velocity of runoff, and the concentration and duration of discharges.

The drainage system at issue was designed by Consort Environments, Inc. ("Consort") and was approved and permitted by the City of Austin and the Texas Department of Transportation ("TxDOT") in 2002.[2] At that time, Sears Roebuck and Co. ("Sears") owned the uphill tract and had entered into an agreement with StoneCrest Services, Ltd. ("StoneCrest Services") to develop the property. In connection with developing the project, Sears hired Consort to prepare the site-development plans for the drainage system. The drainage system was completed and fully operational no later than January 30, 2004. All of the impervious cover that currently drains into the

---

[1] The appellees contend that this figure overstates the amount of acreage discharging onto the Ballard tract, but the precise figure is immaterial to the disposition of the issues in this case.

[2] The recitation of facts is based on the summary-judgment record, viewed in the light most favorable to La Tierra as the non-movant. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

drainage system was completed no later than May 6, 2005. The drainage system employs detention and water-quality ponds and a rock spreader intended to produce a "sheet flow" runoff along the boundary of the uphill tract. No improvements or material alterations have been made to the drainage system since construction was completed, and the system has been regularly maintained since that time. The drainage system and the manner in which it operates is clearly visible from the Ballard tract.

Before and during development of the uphill tract, the Ballard tract was owned by the Ballard Estate. The Ballard Estate sold the property to La Tierra on February 20, 2007, more than three years after the drainage system became operational. At that time, the uphill tract was occupied by a tenant, Main Event Entertainment, L.P., and was no longer owned by Sears, having traded ownership in various transactions over the years. Before purchasing the property, La Tierra commissioned a feasibility study from an independent civil engineering firm, which disclosed to La Tierra that water from the entire uphill tract was being diverted onto the Ballard tract and that development of the Ballard tract would likely require construction of a drainage system that tied into the TxDOT storm sewer system:

> The adjacent property, an entertainment center, has a detention and water quality pond that discharges onto the site. Based on their site development permit, it appears that over sixteen acres drain into those ponds, and thus onto this site. The City of Austin will most likely require a Drainage Easement to be dedicated to ensure that this runoff can continue to drain across the subject property. The low point is located on the east side of the site. LOC [the civil engineering firm that prepared the feasibility report for La Tierra] obtained TxDOT stormsewer [sic] maps for US 183 to determine if it will be possible to tie into the subsurface storm sewer system. The TxDOT storm sewer system does not run directly in front of our site[;] therefore if we were to propose tying into the system, a section of storm sewer pipe would need to be constructed within the right of way to tie into the existing inlet.

3

Notwithstanding the foregoing, La Tierra purchased the Ballard tract "as is" eleven days after receiving the feasibility report and did not obtain any warranties from the Ballard Estate or an assignment of any existing causes of action.

In late August 2007, La Tierra's engineer submitted a proposed site-development plan to the City of Austin. Shortly thereafter, on September 11, 2007, Steve Simmons, a principal in La Tierra, witnessed and videotaped what he described as "flooding"[3] on the Ballard tract caused by storm-water discharge from the Anderson Arbor drainage system during a rainfall event. La Tierra contends that the City refused to approve the proposed site-development plan after viewing the videotape and instead required La Tierra to submit a site-development plan with an expensive conveyance system to handle the excess drainage coming off of the uphill tract. La Tierra's revised development plan, which required La Tierra to construct a long underground drainage pipe to a regional collection and detention system along Highway 183, was ultimately approved by the City in May 2009. Although this result was consistent with the information La Tierra had received in the pre-purchase feasibility report, La Tierra claims that development of the property was delayed more than a year because it was required to redesign and obtain approval of a drainage system on the Ballard tract that was adequate to convey the volume of discharge emanating from the uphill tract. Due to the delay, La Tierra apparently lost several key tenants for the proposed development and had to make concessions to retain others. La Tierra further asserted that the cost to construct an adequate

---

[3] No standard or uniform definition of the term "flooding" has been provided by the parties or by expert witnesses on appeal or in the litigation below. From the record, it appears that La Tierra uses the term "flooding" to refer to a stream or concentrated flow of water onto the Ballard tract.

drainage system would be approximately $204,000 and, because the property cannot be developed without it, the value of the property has decreased by $200,000, according to tax appraisal records. To date, the Ballard tract remains undeveloped.

On February 19, 2009, La Tierra sued Main Event and its general partner M.E.E.P. Management, LLC ("M.E.E.P."), StoneCrest Investments, LLC ("Stonecrest Investments"), and Spirit Portfolio 2005-4, LP ("Spirit") (one of the current owners of the uphill tract) to recover damages for alleged injury to the Ballard tract. Consort was added as a defendant on June 12, 2009, along with StoneCrest Services. On February 1, 2010, La Tierra sued two other owners of the uphill tract—H&S Horizons, LLC ("H&S") and SCMR Anderson Arbor Phase III General Partnership ("SCMR"). At the same time, La Tierra asserted claims as the assignee of the Ballard Estate pursuant to assignments executed on January 11, 2010 by the Ballard Estate heirs.[4] La Tierra asserted that all defendants, with the exception of Consort, own or control the drainage system and are therefore liable under section 11.086 of the water code for wrongfully diverting, impounding, or permitting diversion or impoundment of the natural flow of surface water.[5] Tex. Water Code Ann.

_____

[4] Modelle Brasher Ballard, Robert Gerald Ballard, John Richard Ballard, and Charles Warren Ballard.

[5] Of the defendants, only SCMR held any interest in the Anderson Arbor development at the time the drainage system was constructed and still owns some interest in the development, but it is unclear whether SCMR actually owns an interest in the tract at issue in this case. When La Tierra purchased the Ballard tract, Spirit held an ownership interest in the uphill tract along with another entity that is not a party to this lawsuit. Spirit and H&S both currently hold ownership interests in the uphill tract. Main Event, M.E.E.P, StoneCrest Services, StoneCrest Investments, and Consort currently have no ownership interest in the uphill tract. Main Event held an ownership interest in the property from May 2004 to September 2005 and then for one day in 2006. Pursuant to the deed restrictions, SCMR is the "maintenance director" over common area utility lines, including the drainage system. StoneCrest Services works for SCMR in performing these obligations. StoneCrest Investments does the billing for drainage system maintenance.

5

§ 11.086 (West 2008). La Tierra further asserted claims against all defendants, with the exception of Consort, for negligence, negligence per se, nuisance, and trespass based on the improper diversion of the natural flow of surface water onto the Ballard tract; the same claims were also asserted against Consort under a theory that Consort aided, assisted, advised, or encouraged the other defendants in their wrongful acts. La Tierra alleged that all the defendants recklessly or intentionally made false representations and omissions of material fact in the drainage system design plans for the uphill tract, even though only SCMR held an interest in the property at the time the drainage system was constructed and only Consort designed the plans. La Tierra also sued Consort for alleged negligent misrepresentations and omissions in the design plans. La Tierra sought actual damages for (1) decrease and loss in rental income due to delay in obtaining the development permit, (2) interest on carrying costs during that time period, (3) the cost to build a water conveyance system on the Ballard tract, (4) engineering fees incurred to redesign the water conveyance system, (5) unspecified out-of-pocket real estate expenses, and (6) property devaluation occasioned by the need to construct an expensive water conveyance system.[6] La Tierra also sought exemplary damages, attorney's fees, and injunctive relief under Tex. Water Code § 11.086 and Tex. Civ. Prac. & Rem. Code § 65.011 (West 2008).

The defendants filed various traditional and no-evidence motions for summary judgment, challenging La Tierra's claims on multiple grounds. All defendants filed traditional motions for summary judgment based on limitations and La Tierra's alleged lack of standing to

_____

[6] Although La Tierra's live petition also asserts damages based on erosion, Simmons, La Tierra's designated representative, conceded in his deposition that there is no evidence of erosion. A number of other witnesses testified similarly, and there is no contrary evidence in the record.

6

assert claims for injury to real property occurring prior to its purchasing the Ballard tract, as well as no-evidence motions for summary judgment alleging legally insufficient evidence of damages, causation, reliance, detriment, and other essential elements of each of La Tierra's causes of action. After considering the defendants' motions, the trial court granted a take-nothing judgment against La Tierra, concluding that La Tierra lacks standing, that its claims are barred by the applicable statutes of limitations, and that there is no evidence of damages.

In ten issues on appeal, La Tierra challenges the trial court's summary judgment on grounds that can be summarized as follows: (1) the summary-judgment evidence does not conclusively establish that property damage claims accrued or were discovered prior to September 11, 2007, which is within the limitations period and was after La Tierra purchased the property; (2) even if the property was damaged before La Tierra acquired ownership of the Ballard tract, standing exists based on the assignments of interest from the Ballard Estate heirs, and the discovery rule tolls limitations until the injury was discovered on September 11, 2007; (3) limitations does not bar La Tierra's request for injunctive relief; (4) La Tierra's water code claim against Main Event and M.E.E.P. is viable based on their control over the drainage system, which makes them necessary and indispensable parties for injunctive relief; (5) La Tierra presented more than a scintilla of evidence to raise a fact issue on damages, causation, and other essential elements of its causes of action; and (6) the trial court abused its discretion when it sustained the defendants' objections to La Tierra's summary-judgment evidence.

7

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and we resolve any doubts and indulge every reasonable inference in the non-movant's favor, unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action or who conclusively establishes all of the elements of an affirmative defense is entitled to summary judgment. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

Because standing is a component of subject-matter jurisdiction, we must first determine whether standing exists before proceeding with the merits of the case. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008) ("A court has no jurisdiction over a claim made by a plaintiff without standing to assert it."); *Texas Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) ("[A] court must not proceed on the merits of a case until legitimate challenges to its jurisdiction have been decided."); *Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999) ("Without subject matter jurisdiction, courts may not address the merits of a case."); *see also Thomas v. Long*, 207 S.W.3d 334, 339-40 (Tex. 2006) (observing that court ruling on merits of issue without explicitly rejecting asserted jurisdictional attack has implicitly denied jurisdictional

8

challenge). Standing must exist at the time a plaintiff files suit and must continue to exist between the parties at every stage of the legal proceedings, including the appeal; if the plaintiff lacks standing at the time suit is filed, the case must be dismissed, even if the plaintiff later acquires an interest sufficient to support standing. *Martin v. Clinical Pathology Labs., Inc.*, 343 S.W.3d 885, 888 (Tex. App.—Dallas 2011, pet. denied); *Kilpatrick v. Kilpatrick*, 205 S.W.3d 690, 703 (Tex. App.—Fort Worth 2006, pet. denied); *Bell v. Moores*, 832 S.W.2d 749, 754 (Tex. App.—Houston [14th Dist.] 1992, writ denied) ("A trial court determines its jurisdiction at the time a suit is filed. At that time, the court either has jurisdiction or it does not. Jurisdiction cannot subsequently be acquired while the suit is pending."); *see also Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 n.9 (Tex. 1993) ("Our concern is with a party's right to initiate a lawsuit and the trial court's corresponding power to hear the case ab initio. Standing is determined at the time suit is filed in the trial court . . . .").

As a prerequisite to subject-matter jurisdiction, standing may of course be raised in a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000). When it is, the movant bears the burden of establishing the absence of standing. *Roskey v. Texas Health Facilities Comm'n*, 639 S.W.2d 302, 303 (Tex. 1982); *see also Miranda*, 133 S.W.3d at 228 (applying summary-judgment burden-shifting analysis when subject-matter jurisdiction is challenged via plea to jurisdiction). In determining whether La Tierra lacks standing as a matter of law, we evaluate the evidence in the record, applying the well-established summary-judgment standards outlined above. *See FKM P'ship, Ltd. v. Board of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 628 (Tex. 2008); *Bland I.S.D.*, 34 S.W.3d at 555; *see also State v. Lueck*,

9

290 S.W.3d 876, 885 (Tex. 2009) (challenge to subject-matter jurisdiction may be raised by traditional or no-evidence motion for summary judgment); *Miranda*, 133 S.W.3d at 227. We agree with the trial court that the defendants conclusively established that La Tierra lacked standing.

It is well established that a cause of action for injury to land is a personal right belonging to the person owning the property at the time of injury, and a mere subsequent purchaser cannot recover for an injury committed before his or her purchase. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 331 S.W.3d 419, 424 (Tex. 2010) ("For more than 100 years, this Court has recognized that a cause of action for injury to real property accrues when the injury is committed. The right to sue is a personal right that belongs to the person who owns the property at the time of the injury, and the right to sue does not pass to a subsequent purchaser of the property unless there is an express assignment of the cause of action." (Citations omitted.)); *Vann v. Bowie Sewerage Co., Inc.*, 90 S.W.2d 561, 562-63 (Tex. 1936) ("Where injury to land results . . . the right of action for all the damages resulting from the injury accrues to the owner of the land at the time the thing that causes the injury commences to affect the land."); *Boerschig v. Southwestern Holdings, Inc.*, 322 S.W.3d 752, 767 (Tex. App.—El Paso 2010, no pet.); *Exxon Corp. v. Pluff*, 94 S.W.3d 22, 27 (Tex. App.—Tyler 2002, pet. denied); *Senn v. Texaco, Inc.*, 55 S.W.3d 222, 225 (Tex. App.—Eastland 2001, pet. denied); *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 686 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.). A subsequent landowner may assert a cause of action for pre-existing injuries only if there is an express assignment of the cause of action. *See, e.g.*, *Emerald Oil*, 331 S.W.3d at 424; *Cook v. Exxon Corp.*, 145 S.W.3d 776, 780 (Tex. App.—Texarkana 2004, no pet.).

10

When it purchased the Ballard tract, La Tierra did not obtain an assignment of claims or choses in action possessed by the Ballard Estate. Although La Tierra subsequently obtained assignments from the Ballard Estate heirs, it did not do so until nearly one year after the lawsuit was initially filed, which makes it irrelevant for purposes of determining whether La Tierra had standing, because a later-acquired interest does not retroactively confer standing. *See, e.g.*, *Martin*, 343 S.W.3d at 888; *Kilpatrick*, 205 S.W.3d at 703.[7] Therefore, La Tierra had standing to assert its damages claims in this lawsuit only if the injury occurred after it acquired the Ballard Tract, either because that is when the first injury occurred or because a new injury occurred.

The overarching issue in this case, therefore, is when a cause of action accrued for the alleged injury to the Ballard tract. The date a cause of action accrues is normally a question of law. *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004). Generally, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *Etan Indus. v. Lehmann*, No. 10-0318, 2011 WL 6276308, at *3 (Tex. Dec. 16, 2011) (per curiam); *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). In this case, the drainage system began operating in January 2004, but La Tierra contends that the first injury did not occur—or was not discovered—until September 2007 when Simmons observed operation of the drainage system in a significant rainfall event of approximately 1.5″ of rain.

---

[7] Even if standing were conferred by the assignments and could otherwise relate back to the filing of the lawsuit, it would not do so here because the Ballard Estate's claims, if any, were barred by limitations at the time the assignment was made, even under La Tierra's accrual time line.

The record conclusively establishes, however, that there have been no material changes, modifications, or alterations in the drainage system since it was constructed, and the system has operated either as designed or as constructed since January 2004. The uncontroverted evidence shows that the drainage system here has been regularly maintained and inspected during rainfall events and has operated in a consistent manner since it was constructed. Steven B. King, the engineer who oversaw the design and construction of the Anderson Arbor drainage system, testified as follows:

> No improvements have been made to the drainage system that alter or change the rate of flow out of the drainage system since it was constructed in January 2004. The detention pond on the [uphill tract] has the same number of acres flowing into it and the same discharge outlets since January 2004.

James G. Herman, corporate representative for the StoneCrest entities and SCMR, testified that (1) monthly maintenance is performed on the drainage system, (2) he has personally visited the Anderson Arbor property weekly between 2004 and 2010, (3) he has personally witnessed the drainage system in operation on many occasions during rain events and it has not performed any differently after La Tierra purchased the Ballard tract than it did before La Tierra acquired the property. Indeed, La Tierra's own expert testified that any defects in the drainage system would have existed at the time it was constructed, with the possible exception of an indentation he observed in the "rock spreader" aspect of the system after the lawsuit was filed. According to uncontroverted testimony, however, that indentation merely required readjustment of a few rocks, which was considered to be ordinary maintenance of the system. There is no contrary evidence to raise a fact issue regarding whether there have been improvements or significant alterations to the system that

12

have altered or changed the flows of storm-water discharges since construction was completed in January 2004.

Nor is there any evidence that the drainage system has otherwise changed, shifted, or been altered over time so as to give rise to a new and distinct injury. Although La Tierra contends that the record establishes the existence of "dynamic aspects" of the drainage system that have changed or degraded over time, the record shows only that a few rocks in the rock spreader had shifted and were adjusted as part of regular maintenance after the lawsuit was filed. La Tierra has also posited that a blockage in the drainage system may have occurred and given rise to a new injury, but there is no evidence in the record of any such blockage aside from sheer speculation. As support for that position, La Tierra points to a feature of the drainage system that was intended to disperse part of the flow from the uphill tract onto another adjacent tract. But the February 2007 feasibility report La Tierra received before purchasing the Ballard tract disclosed that it did not do so, stating "[t]he adjacent property, an entertainment center, has a detention and water quality pond that discharges onto the site. Based on their site-development permit, it appears that *over sixteen acres* drain into those ponds, and thus *onto this site*." (Emphases added.) Thus, even if a latent defect or blockage actually does exist, the feasibility report constitutes conclusive proof that such defect or blockage existed before La Tierra acquired the Ballard tract. The foregoing evidence conclusively establishes that the injury to the Ballard tract necessarily occurred before La Tierra purchased it in February 2006. La Tierra does not have standing to recover for pre-existing injuries to the Ballard tract.

13

The record also contains uncontroverted evidence that between the time the drainage system became operational and the time La Tierra acquired the Ballard tract, a number of relatively heavy rainfall events occurred in Austin, as measured at weather stations both to the north and south of the Ballard tract. Without regard to the specific amount of rain that fell on the uphill tract during these events, this evidence conclusively establishes that the drainage system, either as designed or as constructed, has routinely and consistently diverted all 16 acres of water from the uphill tract onto the Ballard tract. Based on these circumstances, it would not be reasonable to infer that the injury to land alleged in this case did not exist until Simmons observed it in September 2007.

La Tierra insists, however, that its causes of action did not accrue until the injury was discovered in September 2007. Despite the open and obvious functioning of the drainage system, La Tierra contends that the injury to the Ballard tract was inherently undiscoverable, citing our opinion in *Thomson v. Espey Huston & Assocs., Inc.*, 899 S.W.2d 415 (Tex. App.—Austin 1995, no pet.). In *Thomson,* we held that the discovery rule could apply to defer accrual of a cause of action for negligence in the performance of engineering services related to construction of a drainage system in the absence of evidence that lay persons would be able to perceive deficiencies in the provision of engineering services before flooding occurred and damage was manifest. *Id.* at 423. The discovery rule, when applicable, defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998). Our sister courts have held, however, that the discovery rule does not apply if the plaintiff lacks standing to bring the claim, reasoning that the discovery rule relates to limitations and "the question of limitations cannot arise

14

unless the plaintiff has standing to come into court." *Senn*, 55 S.W.3d at 225-26 ("The discovery rule cannot work to transfer the ownership of a cause of action from one person to another simply because the second person claims to have discovered the injury."); *see also Boerschig*, 322 S.W.3d at 767 ("The discovery rule is not applicable in cases where the subsequent property owner lacks standing to sue for an injury to land that occurred prior to passage of title."); *Brooks v. Chevron USA Inc.*, No. 13-05-00029-CV, 2006 WL 1431227, at *9 (Tex. App.—Corpus Christi May 25, 2006, pet. denied) (mem. op.) ("Neither fraudulent concealment nor the discovery rule operate[s] to vest a cause of action in an individual [who otherwise lacks standing].").

In this regard, the present case is similar to *Vann v. Bowie Sewerage Co.*, in which a septic tank on the defendant's property had continually discharged polluted water into a creek that flowed through the plaintiff's land. 90 S.W.2d at 562. The plaintiff, who purchased the property nine years after the septic tank was constructed and became operational, asserted that the creek emitted no offensive odors until six months after he purchased the property. *Id.* at 561-62. Witnesses for the sewerage company testified, however, that the septic tank had operated in the same manner since the day it was constructed and put into operation. *Id.* at 562. The Texas Supreme Court concluded that the plaintiff lacked standing to sue for damages to the property even though he did not discover the injury until several months after the purchase because it was not reasonable to infer that the injury did not exist until the plaintiff discovered it:

> In the instant case, the thing that caused the injury to the land in question is the polluted condition of the water that is discharged from the septic tank. The state of facts shown in testimony shows conclusively that water in a polluted condition has been continually discharged from the septic tank ever since the tank was put in operation in 1916; and that said polluted water has, ever since then, found its way,

15

from time to time after each recurring rainfall, down the creek upon the land now belonging to Vann. That this state of affairs did not exist as stated cannot, we think, be reasonably inferred from the circumstance that the creek, where it crosses said land, did not appear to be polluted, and emitted no offensive odors, at the time Vann bought the land, and for six months afterwards. The septic tank, as proved by the Vanns themselves, is inherently incapable of cleansing the sewer water of all deleterious substances, and that the water discharged therefrom into the creek is necessarily polluted. In the light of all other circumstances shown in testimony, *this proof leaves no ground for a reasonable inference that the water that was being discharged from the septic tank into the creek before Vann bought the land in question was unpolluted. The nuisance of which the Vanns complain had already injured said land when Vann bought it, and no right of action in respect to such injury accrued to him.* The deed to the land, which he received from his vendor, did not effect a transfer of the vendor's claim for damages.

*Id.* at 562-63 (emphasis added). Although the result might appear harsh as applied in a given situation, subsequent landowners are capable of protecting their interests by insisting that sellers give them warranties as to the condition of the land, by obtaining an assignment of any existing causes of action, or by performing a more thorough inspection of the land. *Senn*, 55 S.W.3d at 226.

That is especially true in La Tierra's case because the record shows that the underlying facts giving rise to a cause of action were known before La Tierra acquired ownership of the Ballard tract. The drainage system was open and obvious and clearly designed to discharge storm water onto the Ballard tract. In addition, the Anderson Arbor development plan was a publicly available document from which La Tierra's expert testified that the vast majority of the alleged defects, errors, and omissions could have been discovered. Finally, the feasibility report further disclosed the diversion of 16 acres of water onto the Ballard tract and warned of the probability that additional expenses would be required in order to develop the property, including acquiring a

drainage easement and constructing a tie-in to the TxDOT system. The probability noted in the feasibility report not only came to fruition, it is the genesis of all of La Tierra's claimed damages.

Having learned that 16 acres was flowing onto the Ballard tract from an open and obvious drainage system and that extensive drainage work might be necessary to develop the tract, the record establishes conclusively that La Tierra knew or should have known that the drainage system probably altered the natural flow of water and could have discovered the extent of the injury through diligent investigation, including investigating the cost of the remedy noted in the feasibility report and engaging an engineer to conduct a further investigation of the Anderson Arbor site-development plan, from which at least some of the alleged defects could be discovered upon examination. At the very least, prior to purchase, La Tierra was apprised of facts, conditions, and circumstances sufficient to cause a reasonable person to make inquiry that would lead to the discovery of a cause of action, *see Etan*, No. 10-0318, 2011 WL 6276308, at *3; thus, the claims, as a matter of law, were not inherently undiscoverable.[8]  *See BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011) ("An injury is not inherently undiscoverable when it is the type of

---

[8] We likewise conclude that application of the fraudulent concealment doctrine does not operate to confer standing on La Tierra for pre-existing injuries. *Cf. Brooks v. Chevron USA Inc.*, No. 13-05-00029-CV, 2006 WL 1431227, at *9 (Tex. App.—Corpus Christi May 25, 2006, pet. denied) (mem. op) ("Neither fraudulent concealment nor the discovery rule operate to vest a cause of action in an individual [who otherwise lacks standing.]"). Even assuming that (1) the alleged misstatements and omissions in the Anderson Arbor development plans are functionally equivalent to fraudulent concealment and (2) fraudulent concealment of a cause of action could impact the standing analysis, "'[t]he estoppel effect of fraudulent concealment ends when a party learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which if pursued, would lead to discovery of the concealed cause of action.'" *Id.* at *2 (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983)); *see also Etan*, No. 10-0318, 2011 WL 6276308, at *2. As discussed above, the record demonstrates conclusively that La Tierra had sufficient knowledge to halt the estoppel effect of fraudulent concealment, if any, prior to its acquisition of the property.

17

injury that could be discovered through the exercise of reasonable diligence."). Moreover, armed with the information provided in the feasibility report, La Tierra could have taken reasonable steps to protect itself by obtaining warranties and assignments of claims from the Ballard Estate as part of the purchase agreement.

Another principle potentially applicable in this case is that accrual of a claim for injury to real property depends on whether the injury is permanent or temporary. *See Bates*, 147 S.W.3d at 270. If the injury is permanent, causes of action related to the injury accrue when it first occurs or is discovered, whereas claims for temporary injury accrue anew upon each injury. *Id.*[9] La Tierra contends that there is a material fact issue concerning whether the injury was temporary or permanent because the storm-water discharge is caused by the irregular and intermittent force of significant rainfall events and because "dynamic aspects" of the drainage system or a latent defect

---

[9] There is some disagreement among the courts of appeals about whether the characterization of an injury as temporary or permanent is even relevant to the issue of standing. *Compare Denman v. Citgo Pipeline Co.*, 123 S.W.3d 728, 734-35 (Tex. App.—Texarkana 2003, no pet.) (concluding that characterization of injury as permanent or temporary is "not important to the inquiry on standing"), *Exxon Corp. v. Pluff*, 94 S.W.3d 22, 28 (Tex. App.—Tyler 2002, pet. denied) (agreeing with Eastland Court of Appeals that fact of injury is critical issue, not characterization of injury), *and Senn v. Texaco, Inc.*, 55 S.W.3d 222, 226 (Tex. App.—Eastland 2001, pet. denied) ("The distinction between temporary and permanent damages is meaningless with respect to the issue of standing.") *with Denman v. SND Operating, L.L.C.*, No. 06-04-00061-CV, 2005 WL 2316177, at *4 (Tex. App.—Texarkana Sept. 23, 2005, no pet.) (mem. op.) (stating that distinction between temporary and permanent injuries is relevant to determining when cause of action accrued, and thus may be relevant to standing to extent new injury occurred after property was purchased by claimant). We need not decide the question of relevance, however, because even if the distinction is relevant, we conclude as a matter of law that the injury to the Ballard tract was permanent and accrued before La Tierra purchased the property. *Cf. Cook v. Exxon Corp.*, 145 S.W.3d 776, 784 (Tex. App.—Texarkana 2004, no pet.) ("Even if the distinction between temporary and permanent is relevant to the issue of standing, a current owner would have standing only if a new injury occurred while he or she owned the property.").

18

in the drainage system gave rise to a new and different injury that did not occur until observed in September 2007. The defendants assert that La Tierra's injury was permanent as a matter of law because the source of the injury (the drainage system) is permanent, there has been no significant change in the drainage system since it was constructed, and the circumstances giving rise to the alleged injury (storm-water runoff during rainfall events of mild to significant intensity) are not so rare that future injury could not be estimated with reasonable certainty, as established by rainfall records submitted in support of the defendants' motions for summary judgment.

We conclude that La Tierra's claimed injury from the water diversion is, as a matter of law, not "temporary" in nature but is instead permanent, which makes this case distinguishable from *Baker v. City of Fort Worth*, 210 S.W.2d 564, 565-67 (Tex. 1948), which involved flooding from a temporary nuisance. As the supreme court explained in *Schneider National Carriers, Inc. v. Bates*, "a nuisance should be deemed permanent if it is sufficiently constant or regular (no matter how long between occurrences) that future impact can be reasonably evaluated." 147 S.W.3d at 281. In particular, "if a nuisance occurs several times in the years leading up to a trial and is likely to continue, jurors will generally have enough evidence of frequency and duration to reasonably evaluate its impact on neighboring property values. In such cases, the nuisance should be treated as permanent, even if the exact dates, frequency, or extent of future damage remain unknown." *Id.* at 280. Significantly, this is true of nuisances that may vary with recurrent weather conditions, as "[e]ven if a nuisance causes annoyance only during certain weather conditions or certain months, annual experience should provide a sufficient basis for evaluating the nuisance" and its effect on property values. *Id.*; *see also id.* at 283 ("[A] recurrent nuisance is a permanent one, even if it is

19

difficult to predict what the weather will be on any particular day."). As exhaustively examined in *Bates*, a nuisance is considered permanent under Texas law if it "involves an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely." *Id.* at 272. A permanent nuisance may be established by showing that *either* the plaintiff's injuries *or* the defendant's operations are permanent. *Id.* at 283. "The presumption of a connection between the two can be rebutted by evidence that a defendant's noxious operations cause injury under circumstances so rare that, even when they occur, it remains uncertain whether or to what degree they may ever occur again." *Id*. As applied to the facts in this case, this standard compels us to conclude that La Tierra's claimed loss is "permanent" in nature.

As stated previously, the uncontroverted evidence establishes that the drainage system on the uphill tract has been regularly maintained and inspected during rainfall events and has operated in a consistent manner since it was constructed. The uncontroverted evidence also establishes that there have been no improvements or significant alterations to the system that have altered or changed the flows of storm-water discharges since construction was completed in January 2004. Moreover, there is no evidence that the drainage system has otherwise changed, shifted, or been altered over time so as to give rise to a new and distinct injury.[10] Nor is there any evidence of

---

[10] We also note, parenthetically, that the damages La Tierra seeks to recover in this case are inconsistent with the existence of a recently occurring blockage or any injury or loss that could be characterized as "temporary." La Tierra seeks damages for the lost market value of its property, which is a remedy for permanent injury to land. *See Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 276 (Tex. 2004) ("[I]f a nuisance is temporary, the landowner may recover only lost use and enjoyment (measured in terms of rental value) that has already accrued. Conversely, if a nuisance is permanent, the owner may recover lost market value—a figure that reflects all losses from the injury, including lost rents expected in the future."). La Tierra also seeks to recover the cost of a permanent solution to the drainage issues on the Ballard Tract, and La Tierra has treated the cost

20

a latent defect that did not manifest itself until September 2007. The record is simply devoid of evidence raising a fact issue concerning the existence of a new injury or substantial change in the operation of the drainage system occurring after La Tierra acquired ownership in the property.

In addition, rainfall records show that rainfall in amounts as significant or greater than the event in September 2007 has occurred frequently in the area since the drainage system became operational. Although these records do not conclusively establish the amount of rainfall that has fallen on the uphill tract, the records confirm that significant rainfall events are not so rare or infrequent in the area that the alleged injuries to the Ballard tract could be characterized as temporary rather than permanent.

Because the summary-judgment record conclusively establishes that any injury arising from the operation of the drainage system was a permanent injury that existed before La Tierra acquired the property and that La Tierra did not possess an assignment of the prior owners' causes of action at the time the underlying lawsuit was filed, La Tierra lacked standing to recover damages for such injury even if the later-acquired assignments could otherwise have conferred standing. Having reached this conclusion, we need not address La Tierra's remaining issues, which go to the merits of its claims. *See Douglas*, 987 S.W.2d at 882 (holding that trial court lacked subject-matter jurisdiction to address merits of claims that plaintiff lacked standing to assert); *Bell*, 832 S.W.2d at

---

of constructing the drainage remedy as a proxy for the lost market value of the property. The "delay" costs La Tierra seeks to recover in this case, including lost rents, also emanate from the need to construct a permanent solution to the drainage issues on the Ballard Tract and are characteristic of damages for permanent injury to land. *See id*.

21

753-54 (if party lacks standing to assert claim, trial court has no jurisdiction over merits and cause of action must be dismissed with merits undecided).

## CONCLUSION

The summary-judgment evidence conclusively establishes that the alleged injury to the Ballard tract was permanent and accrued before La Tierra acquired an ownership interest in the property. Because La Tierra did not have an assignment of the prior landowners' claims at the time the lawsuit was filed, La Tierra lacked standing to initiate the lawsuit, and the later-acquired assignments of the prior landowners' claims did not relate back to the filing of the lawsuit to cure the jurisdictional deficiency. The trial court therefore properly ruled in the defendants' favor based on La Tierra's lack of standing. The court's purported alternative disposition of La Tierra's claims on the merits, however, was beyond the court's subject matter jurisdiction. Accordingly, we modify the trial court's judgment to dismiss La Tierra's claims for want of jurisdiction and affirm the trial court's judgment as modified.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Henson

Modified and, As Modified, Affirmed

Filed: March 9, 2012

22